In the Matter of Robert I. MARTIN,
Bankrupt, Appellant,

v.

Maxine Martin HENLEY, Appellee.

No. 22957.

United States Court of Appeals,
Ninth Circuit.

Nov. 24, 1971.

Rehearing Denied Dec. 13, 1971.

William G. Wells (argued), of Wells & Herring, Santa Monica, Cal., for appellant.

Michael Korn (argued), Van Nuys, Cal., Biafora & Weiner, Reseda, Cal., for appellee.

Before HAMLEY, HUFSTEDLER and KILKENNY, Circuit Judges.

HAMLEY, Circuit Judge:

This is an appeal from district court orders entered on December 8 and 13, 1967, and February 6, 1968, affirming an order of a referee in bankruptcy entered on October 17, 1966. The referee's order amended, nunc pro tunc, an order entered on August 6, 1964, in In re Robert I. Martin, Bankrupt, granting the bankrupt a general discharge. The effect of the amendment was to provide, specifically, that the listed debt due from the bankrupt to his former wife, Maxine D. Martin (Maxine) constituted maintenance and support of the wife within the meaning of section 17(a) (2) of the Bankruptcy Act (Act), 11 U.S.C. § 35(a) (2), and is therefore not affected by the discharge and is not a dischargeable debt.

A chronological review of the background facts will promote discussion of the issues presented on appeal. On December 27, 1962, Maxine commenced divorce proceedings against Robert I. Martin (Robert) in a California Superior Court. An interlocutory judgment of divorce was entered by default on March 20, 1963. This judgment expressly approved a property settlement agreement entered into by the parties on January

1, 1963.[1] The judgment specifically provided:

> "Pursuant Thereto IT IS FURTHER ORDERED that defendant shall pay to plaintiff as consideration for and part of the division of community property the sum of $500.00 per month during the remainder of the natural life of defendant. * * *"[2]

Robert complied with the order for monthly payments until shortly after entry of the final judgment of divorce on March 22, 1964. On March 23, 1964, Robert remarried. On April 16, 1964, Robert filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. The schedules submitted by Robert listed Maxine as his only creditor. He alleged a debt due to her at the time of filing the petition of $344.75, and a continuing obligation to pay her five hundred dollars a month for the remainder of her life, pursuant to the terms of the property settlement agreement.

On April 21, 1964, Robert filed in the bankruptcy proceeding an application for an order staying and restraining any effort by Maxine to utilize state process for the purpose of enforcing her state judgment referred to above. A hearing on this application was held before the referee on June 30, 1964.

On August 6, 1964, before any order had been entered as a result of that hearing, the referee signed and there was entered a general order of discharge which recited that Robert was discharged from any and all debts and claims which, under the Act, are made provable against his estate "except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy."

On August 10, 1964, the referee entered an order denying Robert's application for a stay on the ground of unclean hands, and on the alternate ground that the monthly payments provided for in the decree of divorce "were for the maintenance and support" of Maxine, and the obligation to make such payments is therefore not a dischargeable debt under section 17(a) (2) of the Act. Robert filed a petition for a district court review of that order.

On January 27, 1965, the district court affirmed the referee's order of August 10, 1964, on the ground that the referee properly held Robert was not entitled to a stay of state court proceedings because of unclean hands. On February 18, 1965, the district court entered a clarifying order stating that since the referee's order was sustainable on the ground of unclean hands, it is " * * * unnecessary for this court to examine the alternate ground upon which the bankruptcy court based its decision."

Maxine remarried on February 12, 1966. On July 18, 1966, Robert filed in the state divorce case, a motion pursuant to California Code of Civil Procedure, section 675b, to cancel the pertinent part of the interlocutory judgment because of Robert's discharge in bankruptcy. After proceedings in this matter the state Superior Court announced, on September 15, 1966, that it would grant the motion to cancel the payment feature of the interlocutory judgment.

In so ruling, the state trial court held that it was not bound by the decision of the referee, entered on August 10, 1964, that the payment obligation was for the support and maintenance of Maxine and was not dischargeable. Instead, the state Superior Court held, such payments were made in consideration of the

---

1. Under the property settlement agreement, Robert agreed to pay Maxine as part of the agreed division of community property, the sum of five hundred dollars per month during the remainder of her natural life. The settlement agreement specifically states that these payments

> " * * * represent a division of community property rights and not support

of the wife, and the wife does hereby waive any and all right to support or maintenance from the husband."

2. The judgment made no specific provision for payments labeled "alimony" or "support."

division of community property and would be dischargeable in bankruptcy. On September 30, 1966, the state Superior Court entered a formal order cancelling Maxine's money judgment against Robert. Maxine appealed this state court decision to the California District Court of Appeal.

In the meantime, on September 26, 1966, Maxine's counsel had applied to the referee in bankruptcy for "correction of clerical mistake and error in order of discharge dated August 6, 1964." She sought an order nunc pro tunc so as to make the order of August 6, 1964, "consistent with the Findings of Fact and Conclusions of Law and Judgment signed by the Court on August 10, 1964." An expedited hearing date of October 3, 1966 on this motion was obtained, which the referee held to in denying Robert's motion for a continuance.

In the course of this hearing Robert introduced in evidence a certified copy of the state Superior Court order determining that the debt to Maxine was dischargeable. Nevertheless the referee, on October 17, 1966, entered an amended order of discharge, nunc pro tunc as of August 6, 1964, supported by findings of fact and conclusions of law, containing this provision:

> "IT IS FURTHER ORDERED that the debt due from the bankrupt to Maxine D. Martin, as listed in Schedule A–3 of the Debtor's Petition, comes within Sec. 17 [a] (2) of the Bankruptcy Act (11 U.S.C. Sec. 35) and is not affected by the discharge of the bankrupt herein, and is not a dischargeable debt;" [3]

Robert petitioned the district court to review this order and, on December 8, 1967, the district court affirmed the referee's order of October 17, 1966. In doing so, the district court expressed no opinion concerning the referee's res judicata ruling. Instead, the court held: (1) the referee had the right and duty to correct the "clerical error," and (2) the referee's finding that the agreement to pay five hundred dollars a month was essentially a means of disposing of Robert's support obligation, and therefore not dischargeable under section 17 [a] (2) of the Act, is supported by the record.

On December 13, 1967, the district court entered an amended order affirming the referee's order of October 17, 1966, the purpose being to correct a date stated in the December 16 order. On February 6, 1968, the district court entered an order denying Robert's motion to vacate, alter or amend the December orders. This appeal is taken from these three orders.

During the pendency of this appeal, Robert applied for and received at least ten extensions of time to file his opening brief in this court. He sought and obtained these extensions on the ground that disposition of the then pending appeal in the state courts, from the state Superior Court judgment of September 30, 1966, cancelling Maxine's money judgment against Robert would, in all probability " * * * eliminate a substantial (if not all) number of the issues presently before this Court. * * * "

The California Supreme Court, on June 26, 1970, reversed the state Superi-

---

3. The referee specifically found that the order of discharge dated August 6, 1964, had been entered "through a clerical mistake" and "inadvertence," in that "a limited and qualified order of discharge should have been entered in conformity with said order of August 10, 1964, holding that the debt due to Maxine D. Martin was not a dischargeable debt."

The referee declined, on the theory of res judicata, to reconsider his August 10, 1964 determination that the monthly pay-

ments provided for in the decree of divorce "were for the maintenance and support" of Maxine, and the obligation to make such payment is therefore not dischargeable in bankruptcy. Said the referee:

> "The affirmance of the judgment of August 10, 1964, makes it res judicata as to all the issues, claims or contentions passed on by this court, although the reviewing court did not consider or decide all of them [citing cases]."

or Court order. Martin v. Martin, 2 Cal.3d 752, 87 Cal.Rptr. 526, 470 P.2d 662 (1970). In reversing, the California Supreme Court gave res judicata effect to the referee's order of October 17, 1966, amending and correcting the August 6, 1964 discharge in bankruptcy to exclude from the discharge the debt due from Robert to Maxine, and to the affirmance thereof by the federal district court entered December 8, 1967.

On this appeal, the parties have raised many complex procedural and substantive issues. However, we believe the appeal falls quite naturally into a dual-issue posture, under which we can proceed to consider the collateral issues involved. We will first examine the referee's October 17, 1966 order to see if he had power to make that order in the form which he chose, i. e., by nunc pro tunc amendment of the August 6, 1964 discharge to exclude Robert's debt to Maxine as nondischargeable. We will then consider the complex procedural steps involved in this case, so that we may determine (1) if the August 10, 1964 determination that the debt was not dischargeable is properly before this court and, if so, (2) whether that determination is correct and sustainable.

I

*The Form of the October 17, 1966 Referee's Order*

■ The referee's October 17, 1966 order, as mentioned above, amended and limited the general discharge nunc pro tunc. Robert argues that this order was beyond the referee's power, while Maxine contends that the referee acted properly. We agree with Robert and hold that, under the circumstances of this case, the referee had no power to make such a nunc pro tunc amendment of the general discharge of August 6, 1964.

At the outset, we question whether the claimed error which the referee purported to correct by amendment was really "clerical," in view of its substantial effect on the content of the discharge. The authorities cited by Maxine to support her argument seem for the most part inapposite, and some of them directly support Robert's position. *See* Matthies v. Railroad Retirement Board, 341 F.2d 243, 246–248 (8th Cir. 1965); Blankenship v. Royalty Holding Company, 202 F.2d 77 (10th Cir. 1953).

However, we find it unnecessary to decide if the referee's amendment was to correct a "clerical" error because, in our opinion, there was no error to correct. Nunc pro tunc amendments are permitted primarily so that errors in the record may be corrected. The power to amend nunc pro tunc is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice.

An examination of the original discharge of August 6, 1964, shows that it does not operate to discharge any debts which are non-dischargeable under the Bankruptcy Act. In addition, the August 10, 1964 referee's order, insofar as it is relevant to this controversy, simply determined that Robert's debt to Maxine was non-dischargeable under the Act. Thus, the two orders are in no way inconsistent with one another, and the referee's October 17, 1966 conclusion that an amendment was necessary to establish conformity between the two orders is therefore incorrect.

We accordingly hold that the district court erred in failing to rule that the referee acted beyond the scope of his powers in ordering the nunc pro tunc amendment.

■ Our inquiry in this case, however, does not end with that holding. The referee may simply have chosen an improper vehicle to carry into effect a proper conclusion that Robert's debt to Maxine was not dischargeable under the Act. The critical question in the whole controversy is whether Robert's debt to Maxine is dischargeable. If the referee correctly determined that this debt is not dischargeable, we can, and should, partially affirm the district court orders and direct the entry of an order declar-

**300**

ing the debt non-dischargeable.[4] Such an order, if appropriate, will give Maxine substantially the same relief she would have gained under the October 17, 1966 amendment of the August 6, 1964 order, which amendment we have held invalid.

## II

### The Referee's Determination of Non-dischargeability

■ It will be recalled that, in his order of August 10, 1964, the referee gave two grounds for denying a stay, one being unclean hands and the other being the determination that Robert's debt to Maxine was not dischargeable. As noted above, the district court in 1965 affirmed the August 10, 1964 bankruptcy court order on the ground of unclean hands, and expressly declined to rule on the determination of non-dischargeability. If a court of first instance (the referee, here) bases its judgment on alternative grounds, and the reviewing court affirms the judgment on only one of the two grounds, refusing to consider the other, the second ground is no longer conclusively established. International Refugee Organization v. Republic S. S. Corp., 189 F.2d 858, 862 (4th Cir. 1951); Moran Towing and Transportation Company v. Navigazione Libera Triestina, S. A., 92 F.2d 37, 40 (2d Cir. 1937); 1B Moore's Federal Practice, ¶ 0.416 [2] at 2232; A.L.I. Restatement, Judgments, § 69, comment b, at 316

Consequently, the referee's August 10, 1964 determination of non-dischargeability, not dealt with on review, had no res judicata or collateral estoppel effect, and the referee's conclusion, in his October 17, 1966 order, that the earlier determination was binding upon him under res judicata principles, is incorrect.

■ However, for the two reasons stated below, we think his error in this respect is unimportant. First, although the referee erred in giving res judicata

effect to his earlier order, he was still entitled to rely on that earlier determination under the "law of the case" doctrine. The district court in its 1965 affirmance had refused to rule on the determination, and the referee could therefore continue to rely on its validity unless and until it was disapproved on review. See 1B Moore's Federal Practice, ¶ 0.416 [2] at 2231.

Second, and more important, the experienced district judge who reviewed the October 17, 1966 referee's order apparently recognized that the referee was not correct in giving res judicata force to the August 10, 1964 determination; accordingly, the district court in its 1967 and 1968 review proceeded to examine the August 10, 1964 determination of non-dischargeability on the merits. This examination was proper, and necessary, because the determination had never been passed upon by the district court in 1965, and thus was not the law of the case at that level. See 1B Moore's Federal Practice, ¶ 0.404.

After review, the district court in its 1967 and 1968 orders affirmed on the merits the referee's determination of August 10, 1964 that the debt was not dischargeable. The district court held that the record which was before the referee "amply supports his finding."

■ Our examination of the record convinces us that the referee, in 1964, and the district court, in 1967, did not err in so finding. The oral testimony indicates that Robert and Maxine intended the five hundred dollars per month obligation to be in lieu of support and maintenance. It is true that the terms of the agreement (see note 1 and associated text, *supra*) purport to cast the obligation as a "property settlement." However, the fact that the obligation is to pay the sum of five hundred dollars a month during the remainder of Maxine's natural life is inconsistent with the concept of property settlement. It need only be added that Robert

---

4. We express no opinion as to the effect which Pub.L. 91–467, § 7 (Oct. 19, 1970),

84 Stat. 992 would have if it were applicable to this case.

presents no argument in this court to the effect that the record does not support the referee's and district court's findings, nor does he contend that the parol evidence rule precludes consideration of the testimony bearing upon the intention of the parties.

We conclude that the district court did not err in affirming the referee's August 10, 1964 determination that the debt owed by Robert to Maxine constituted support and maintenance and was therefore not dischargeable in bankruptcy.

Robert strongly urges, however, that as a general rule the determination of whether a discharge releases a particular debt is left to the state court in which the debt is sought to be enforced and the bankruptcy court will not make such a determination except in exceptional and unusual circumstances. In similar vein, he argues that the district court should have applied the doctrine of abstention.

■ The bankruptcy court has jurisdiction, on a creditor's application, to determine whether or not a particular claim is dischargeable, and if it makes such an adjudication, the judgment is res judicata in other courts. 1B Moore's Federal Practice ¶ 0.419 [3.—4] at 3053–3054. *See* Harrison v. Donnelly, 153 F.2d 588 (8th Cir. 1946); Collier on Bankruptcy, ¶ 17.28, at 1730, n. 22. This power of the bankruptcy court, however, does not mean that the creditor may, as a matter of right, secure an adjudication in the bankruptcy court on the dischargeability of his claim. As a general rule of discretion, the bankruptcy court should, absent special and unusual circumstances, refrain from ruling on the dischargeability of a specific claim then in issue in a state court proceeding. *See* Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Copperstate Supply Company v. Fisher, 449 F.2d 760 (9th Cir. September 30, 1971); Hilton Credit Corp. v. Jaggli, 366 F.2d 793 (9th Cir. 1966); 1A Collier on Bankruptcy, ¶ 17.28 (14th Ed.). If that general rule

of discretion is to be applied here, then we cannot affirm the referee and district court in their determination of nondischargeability and cannot direct entry of a decree declaring the debt non-dischargeable.

■ In our opinion, however, there exist special and unusual circumstances in this case which take it out of the rule of discretion and which warranted adjudication of the dischargeability question by the referee. We note, first, that the rule of discretion never did apply to the referee's initial determination, on August 10, 1964, that the debt was not dischargeable. At that time, there was no pending state proceeding. More important, the determination was made as part of Robert's application for a stay of threatened state court proceedings. In deciding whether to grant such a stay it is not only the right, but the duty, of a bankruptcy court to determine the issue of dischargeability. In re Metz, 6 F.2d 962, 964 (2d Cir. 1925); 1A Collier on Bankruptcy, ¶ 11.04 at 1149.

Thereafter, it was Robert who took the problem to the state court, in the face of the referee's adverse ruling on the issue of dischargeability. Robert applied in the state court for cancellation of the portion of the interlocutory divorce decree obligating him to pay Maxine five hundred dollars a month, on the ground that the obligation was discharged in bankruptcy. In our view the rule of discretion, which was designed to protect the bankrupt (*see* 1A Collier on Bankruptcy, ¶ 17.28 at pp. 1728–1731 (14th Ed.)), need not be applied where it is the bankrupt himself who, having suffered an adverse decision in the federal proceeding which he initiated, then initiates another proceeding on the same issue in a state court. For this reason we think the referee correctly refused to apply the rule of discretion and properly dealt with the problem both in 1964 and in 1966.

The events which have occurred since the referee's 1966 reassertion of his determination provide further reason not to apply the rule of discretion at this

level. Since the California Supreme Court has reversed the state court determination that the debt was dischargeable, there is now no conflicting state judgment. And, because the California Supreme Court declined to review the question of dischargeability on the merits, resting instead upon res judicata grounds, a refusal by this court to decide the issue would leave the parties with no ultimate determination on the merits after more than seven years of litigation. Unless we adjudicate the issue on the merits, we think it problematical whether the parties can ever get any such adjudication.

We accordingly hold that, because of the exceptional and unusual circumstances of this case, the general rule of discretion to which Robert refers did not preclude the referee, and does not preclude us, from deciding the dischargeability question.

■ Robert also argues that Maxine is estopped to deny the validity or content of Robert's discharge of August 6, 1964, because she did not seek to amend that order to exclude Robert's obligation for more than two years, and until after the California Superior Court had announced that it would enter an order cancelling the obligation.

Under the circumstances we have described, there was no estoppel. Maxine was entitled to rely on the referee's determination of August 10, 1964, unless and until reversed, whether or not it was incorporated in an amended order of discharge. It was only when Robert went to the California courts to obtain a contrary ruling that Maxine found it necessary to go before the referee in 1966. She sought a continuance of the state court proceeding until the referee could rule, but this was denied. If anyone was estopped by delay it was Robert, for the referee's August 10, 1964 ruling was adverse to him. In any event, the gravamen of Robert's estoppel argument goes to the propriety of the amendment of the discharge, which amendment we are herein setting aside.

We find Robert's remaining arguments of insufficient substance to warrant discussion.

We express no opinion as to whether Robert is entitled to obtain in state court a cancellation of further support and maintenance obligation, in view of Maxine's remarriage.

The cause is remanded to the district court for reinstatement of the August 6, 1964 discharge in its original form, and for entry of a decree, consistent with the district court's conclusion, determining that Robert's obligation to Maxine under the divorce decree constitutes maintenance and support which is not dischargeable in bankruptcy.