**In the Matter of William Andrew STURGELL, Debtor.**

**Bankruptcy No. 3–80–00948.**
**Adv. No. 0348.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Oct. 29, 1980.

Paul R. Valente, Springfield, Ohio, for plaintiff.

Carl E. Juergens, Springfield, Ohio, for defendant.

James R. Warren, Springfield, Ohio, trustee.

MEMORANDUM DECISION
AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court for disposition of the plaintiff's complaint to determine the dischargeability of her claim against the above debtor. The following

decision is based upon the stipulations in the pretrial order, the evidence adduced at the trial held August 15, 1980 and post–trial legal memoranda submitted by the parties.

William A. Sturgell, the defendant, filed his petition for relief under Title 11 United States Code Section 701 *et seq.* on April 10, 1980. He has been an employee of International Harvester Company for the past 17 years. In 1978, his annual income was $19,-950.00, and in 1979, it was $15,550.00. The defendant and the plaintiff, Sandra K. Sturgell, filed a Petition for Dissolution of Marriage with the Court of Common Pleas of Clark County on August 7, 1979. Their marriage was subsequently dissolved. According to the Separation Agreement which forms the basis of the present dispute and which is attached to the parties' Petition for Dissolution, marked Exhibit A herein, the defendant had custody of his daughter, Stephanie, age 17; however, according to his testimony at trial, the defendant relinquished custody of Stephanie to the plaintiff on or about November, 1979 when he went on strike from his employment with International Harvester Company. The record contains no evidence that the debtor has had any other dependents since his dissolution of marriage. Exhibit A also indicates that the plaintiff has had custody of the parties' two other children, Shelly, age 14, and Susan, age 8, since the dissolution and that the defendant has been obligated to the plaintiff for child support of $27.50 per week for each of these children. The record is unclear as to whether the defendant was additionally responsible for $27.50 per week for Stephanie when he relinquished her custody in November, 1979. In any event, the defendant is in arrears for his child support in the amount of $1,225.00 through June 26, 1980.

The debtor has listed three secured creditors in Schedule A–2. Associates Financial Services Company has a claim for $694.00 secured by a mortgage on five rooms of furniture in the plaintiff's possession; Crown Finance Corporation has a claim for $4,039.55 secured by a mortgage on an automobile, a television and various other items of furniture; International Harvester Employees Credit Union has a claim for $11,-000.00 secured by a mortgage on a 1979 Datsun automobile. Schedule A–3 listing unsecured creditors originally showed total claims to be $496.21, but the debtor amended A–3 to include two claims of the plaintiff for $1,850.00 bringing total unsecured claims to $2,346.21. The debtor shows no ownership in real property and claims $5,331.00 worth of personal property.

The case at bar arises out of the following language in the above-mentioned Separation Agreement:

> DEBTS AND OBLIGATIONS (13) Husband shall pay the debts and obligations to Associates Finance Company, Crown Finance Company, Sears, and the International Credit Union. The wife shall pay the mortgage to the Kissell Company on the real estate and further she shall be responsible for taxes, insurance and all of the utilities therein.

Exhibit A. Apparently, the defendant did not meet his obligations under this term, and Associates Financial Services Company sued both the plaintiff and defendant in Municipal Court of Springfield, Ohio. Associates was awarded judgment in the sum of $694.16 plus interest at 6% per annum from March 20, 1980. By filing his petition with this Court, the defendant seeks to have his liability on that judgment discharged in bankruptcy; the result would be that the plaintiff will become solely liable for the Associates judgment. Consequently, the plaintiff has instituted this action to determine, first, the nature of the defendant's debt to Associates and, second, the dischargeability of that debt. Also, the plaintiff seeks a determination that the defendant's liability to her for child support arrearages is not dischargeable in bankruptcy.

With regard to the disputed obligation to Associates Financial Services, the plaintiff claims the debtor should not be discharged from this claim because his liability for payment pursuant to the parties' Separation Agreement constitutes a form of alimo-

ny, support or maintenance of the plaintiff and, thus, is nondischargeable under 11 U.S.C. § 523(a)(5). In opposition, the defendant claims he assumed responsibility for paying Associates as his part of the parties' division of their mutual debts at the time of their dissolution. He testified that he did not intend his payment to Associates to be in the nature of alimony.

This Court has, in several previous cases, analyzed (under Ohio case precedents) similar fact situations and issues pertaining to the dischargeability of state court divorce and alimony decrees–all precipitated by ambiguous, inartistic and controversial use of legal terms in the decrees or separation agreements incorporated therein by reference. The conclusions reached on the facts *instanter* would be the same. As pointed out by this Court in *Horner v. Horner*, B–3–77–800 (1978), the term alimony, as employed in the bankruptcy act, connotes maintenance and support, conformably to the decision in *Waller v. Waller* (6th Cir. 1974) 494 F.2d 447. Without reiterating the rationale of the decisions by this Court in *Wray v. Wray*, B–3–77–296, *Shaw v. Butler*, B–3–77–1328, and *Horner v. Horner*, B–3–77–800, a crucial factor is the custody award and the maintenance of the family home. See this Court's decision on *Bryant v. Bryant*, Case No. B–3–78–609 (1978).

Turning now to the issues as posed under the Bankruptcy Reform Act of 1978 (Bankruptcy Code) we find that the rationale should not be materially changed.

■ The first issue facing the Court is what is the nature of the defendant's assuming responsibility for payment of the Associates debt. The legislative history states, and one commentator agrees, that

what constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir. 1974) ... are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the

debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6318; *see also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862 and 3 Colliers on Bankruptcy (15th ed. 1979) ¶ 523.15. Accordingly, we look to the facts and circumstances surrounding this case to determine the nature of the disputed payment.

The stipulations in the parties' pretrial order establish that, at the time of the dissolution, the defendant was earning approximately $17,000.00 per year and the plaintiff was earning approximately $7,500.00 per year. Mr. Sturgell retained custody of one daughter, Stephanie; however, he relinquished custody to the plaintiff only three months later when he went on strike at International Harvester. By the terms of the Separation Agreement, the plaintiff retained custody of the couples' two other children and, obviously, had custody of all three daughters within a few months of the date of the Separation Agreement. The plaintiff assumed complete financial responsibility for the house in which she and her three children lived. Included in this responsibility is payment of the monthly mortgage, property taxes and insurance. The defendant agreed to assume the debts and obligations to Associates Financial Service Company, Crown Finance Corporation, Sears, Roebuck Company, and International Harvester Employees Credit Union. The debtor has listed all of these creditors in his bankruptcy petition, and we assume he seeks to discharge each of their claims as there is no evidence of reaffirmation agreements with any of them.) The parties were married in 1961, divorced in July, 1978, remarried in Novem-

ber, 1978 and entered into a dissolution of marriage in August, 1979. Thus, but for an interruption of four months, the parties were married for 18 years. By the terms of the Separation Agreement, both parties waived periodic alimony.

The Court finds all of these factors shed light on the intent of the parties at the time of the dissolution. Obviously, the defendant earned far more money than the plaintiff and continues to earn more than she. The plaintiff has had the responsibility of maintaining the parties' three children by having to feed them, clothe them and keep a roof over their heads. Despite this responsibility and very little income, the plaintiff agreed not to accept periodic alimony from the defendant. We believe that the inducement for her agreement to forego direct cash payments on a periodic basis was her knowledge that the defendant had agreed to pay the above–mentioned creditors and assume responsibility for those debts. Thus, the plaintiff would be relieved from that burden and would be better able to support herself and her children on her own income supplemented by the $27.50 per child of support payments. We find that the defendant agreed to assume responsibility of the subject debt so as to provide the plaintiff with added economic security to aid her in the support and maintenance of herself and their children.

Congress presented its final word on the meaning and effect of 11 U.S.C. § 523(a)(5) on the floors of both Houses on September 28, 1978 and October 6, 1978 saying,

> Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settle-ment agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child.

124 Cong.Rec. H 11,095–6 (Sept. 28, 1978); S 17,412–13 (Oct. 6, 1978). We find that under the instant factual situation, the decision by the defendant to pay Associates Financial Service for five rooms of furniture being used by the plaintiff and the couple's three children was made with the intention of providing alimony, support and maintenance for these four people and was not made with the intention of splitting the parties' debts. We would note that the court *In Re Williams*, 3 B.R. 401 (Bkrtcy.Ga. 1980) considered the same criterion as we have enumerated, such as the length of time the parties were married, the number of children involved and the relative incomes of the parties. In that case, all these factors convinced the court that the parties did not intend the assumption of certain debts by the debtor in bankruptcy to have been in the nature of alimony because the parties had only been married approximately one year, they had no children and the wife had always earned more than the debtor. In fact, the debtor was unemployed at the time of the divorce. The facts presently before us are almost a total contrast to those in the *Williams* case; consequently, we have come to the opposite conclusion as did the *Williams* court.

■ With regard to the defendant's responsibility for child support arrearages, we find as a matter of law that the payments into the Bureau of Support for Clark County do not constitute an assignment of the plaintiff's right to receive such payments. Based on the testimony of the Clerk of Courts, it is now concluded that this procedure is merely an administrative requirement of the state court for the orderly collection of child support and does not fall within the § 523(a)(5)(A) prohibition. The debt as such is not assigned; but, rather, only the method of collecting and administering the fund.

The determinative factors are the mutual obligations of both parents to provide proper and adequate support of their minor children and the disparate burden to the plaintiff in light of the respective incomes of the parties. The mutuality of intent that there would be no alimony paid signified only that the defendant could not be later required, through the continuing jurisdiction of the state court, to make payments to plaintiff for her personal use, even if their circumstances change.

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that the defendant's responsibility to pay Associates Financial Services Company in connection with the parties' Separation Agreement is in the nature of alimony, support and maintenance of the plaintiff, and therefore, the continued responsibility to the plaintiff for such payment is nondischargeable in bankruptcy.

It is further ORDERED, ADJUDGED AND DECREED that the collection by the Bureau of Support of Clark County of child support payments does not work as an assignment from the plaintiff to the Bureau of her right to receive such payments; therefore, the debtor's obligation to the plaintiff for child support arrearages is nondischargeable in bankruptcy.