**In the Matter of Howard F. JENKINS, Jr., aka Frank Jenkins, Debtor.**

**Beverly C. Jenkins GRAHAM, Plaintiff,**

v.

**Howard F. JENKINS, Jr., Defendant.**

**Bankruptcy No. 3–81–00340.**

**Adv. No. 3–81–0130.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 19, 1983.

William L. Bowen, Middletown, Ohio, for defendant.

H.T. Derivan, Middletown, Ohio, for plaintiff.

DECISION

ELLIS W. KERR, Bankruptcy Judge.

The Complaint in this case was filed by Beverly C. (Jenkins) Graham, former wife of the sole Defendant, Howard F. Jenkins who filed Bankruptcy Petition February 6, 1981 (Case # 3–81–00340). The Complaint alleges that Plaintiff is a creditor listed in Schedule A–3 in Defendant's Bankruptcy;

that on June 9, 1980 there was filed a Decree of Dissolution of marriage of these parties; that the Decree included provisions Ordering Defendant to pay indebtedness owing Beneficial Finance Corporation (Beneficial), Money, Inc. (Money), and Mastercharge; that provision was made that Defendant agreed to indemnify Plaintiff and/or save her free and harmless from liability thereon; and, that this indemnification was as and for alimony, maintenance and/or support of Plaintiff.

The Complaint prayed that the obligation owing be held not dischargeable; that Plaintiff be granted Judgment in the amount of the balances of each of the obligations, together with interest and costs.

## STIPULATIONS

On November 24, 1981 there was filed a document entitled "Pre-Trial Order". It was signed by both Attorneys and a place provided for signature of Judge but not signed by the Judge. It was agreed that this document should be entitled "Stipulations" and was so filed.

These Stipulations agreed (among other matters) that:

1. Defendant when he filed Bankruptcy included Plaintiff as a creditor in an attempt to discharge any obligation he may have to her.

2. Plaintiff filed this adversary proceeding to have declared non-dischargeable the obligations of Defendant arising from the Separation Agreement and Decree of Divorce.

3. An action upon an account and a separate Replevin action have both been filed against these parties in the Hamilton County Municipal Court by Money, Inc. Under the terms of the demand in the Replevin action, Money, Inc. is attempting to replevin the miscellaneous household goods and furnishings which were awarded to Plaintiff in the aforementioned Judgment Entry and Decree of Divorce and attached Separation Agreement and for which Howard F. Jenkins, Jr. was required to pay the obligation under the terms of said Decree and Separation Agreement.

4. Beneficial Finance Company has instituted litigation in the Middletown Municipal Court against Plaintiff upon a note and has proceeded to obtain judgment thereon against Plaintiff. The obligation upon said note to Beneficial Finance Company was to be paid by Howard F. Jenkins, Jr. under the terms and provisions of the Decree of Dissolution and attached Separation Agreement.

5. Plaintiff filed a motion for citation in contempt of court against Howard F. Jenkins, Jr. in the Court of Common Pleas, Division of Domestic Relations, Butler County, Ohio, in February, 1981 and that said Court has declared its intent to take no action upon said motion until a determination is made by this Court in the within adversary proceedings.

6. Plaintiff married Andrew Graham on July 10, 1980 and one child has been born as issue of that marriage, to-wit: Sheri Marie Graham, whose date of birth is October 24, 1980. The true and natural father of said child is Andrew Graham.

7. Plaintiff knew at the time she signed the Separation Agreement that she was pregnant with Sheri Marie Graham and the Defendant, Howard F. Jenkins was not the father of said child.

8. The following dates are correct: 5–3–74, Marriage (Plaintiff and Defendant); 4–25–80, execution of Separation Agreement; 5–9–80, Dissolution filed; 7–10–80, Application of Marriage License between Beverly Jenkins and Andrew Graham; 7–19–80, Marriage Beverly Jenkins and Andrew Graham (Joint Exhibit 3); 10–24–80, Birth of Sheri Marie Graham.

9. The following documents shall be admitted into evidence:

(1) Dissolution Decree and Separation Agreement (Joint Exhibit 1);

(2) Application for wedding license to Andrew Graham;

(3) Wedding license (Jenkins—Graham) (Joint Exhibit 2);

(4) Birth Certificate of Sheri Marie Graham (Joint Exhibit 4).

## FACTS

The April 25, 1980 Separation Agreement included among other provisions the following:

"Division of Personal Property" consisting of nine paragraphs of detail;

"DIVISION OF REAL ESTATE: It is agreed between these parties that the real estate located at 2028 Winton Street, Middletown, Ohio, shall be retained wholly by Wife. Said property belonged to Wife prior to this marriage. Wife agrees to assume and pay the mortgage indebtedness owing thereon to Middletown Federal Savings & Loan Association, all real estate taxes, insurance, assessments and maintenance and save Husband free and harmless from any liability thereon.";

"PAYMENT OF OUTSTANDING INDEBTEDNESS

Husband agrees to pay the outstanding indebtedness owing to Beneficial Finance, Money, Inc., and Mastercharge. Wife agrees to pay the outstanding indebtedness owing to Rikes, Penneys, McAlpins, Dr. Zelling, H.T. Derivan, the Emergency Room and the Middletown Hospital. Each of these parties agree to indemnify the other against any liability or obligation concerning the debts assumed. Each of these parties agrees not to charge any obligation to the credit of the other from the date of this agreement and hereafter."

Suggested guidelines for writing a concise opinion suggest one that is readable the first time and easy to read, that cuts down facts, avoids reproduction of record and huge block quotes, and eliminates foot notes.

This opinion attempts to follow these suggestions but the nature of the case demands detailed review of the testimony.

Citations are kept at a minimum. Rather than including in this opinion the many cases researched we choose to list these in an "APPENDIX".

## CONCLUSIONS OF LAW

What constitutes alimony, maintenance or support will be determined under the Bankruptcy Law not state law. *In re Sturgell*, (Bkrtcy.—S.D. Ohio, W.D., 1980), 7 B.R. 59 at 61; *In re Williams*, 3 B.R. 401 (Bkrtcy.N.D. Georgia 1980); *In re Diers*, 7 B.R. 18 (at 20) (Bkrtcy.S.D.Ohio, W.D.1980); *In re Spang*, 3 B.R. 619, 1 C.B.C.2d 1104 (Bkrtcy.W.D.N.Y.1980).

It has been suggested that cases decided before the Bankruptcy Code became effective are not now applicable. We suggest that even though they are not authority to the extent they are based upon state law certain portions are pertinent. For example: *Avery v. Avery*, 114 F.2d 768, 770 (6th Cir.1940), stated: "There is no peculiar sanctity surrounding the words 'property settlement.' Bankruptcy courts sit in equity . . . and have power 'to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.' "

A husband's promise to hold the wife harmless on debts on certain property does not itself make the promise one that is either dischargeable or non-dischargeable. The Bankruptcy Court must make this determination. This depends upon the facts in each case. These facts vary so much it has resulted in decisions seemingly inconsistent but really not so because of the difference in fact situations.

As stated in *In re Gonzalez*, 27 B.R. 81 (Bkrtcy.N.D.Ohio 1983):

"Factors which court may consider in determining dischargeability of a debt arising out of a divorce decree include the relative economic circumstances of the parties, nature of the underlying debt, length of the marriage and number of children involved."

"Under the section of the Bankruptcy Code which makes nondischargeable any debts arising from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance or support of spouse, the bankruptcy court is obliged to determine under federal, not state, law, whether such an agreement is actually in the na-

ture of an agreement to pay alimony, maintenance or support. Bankr.Code, 11 U.S.C.A. § 523(a)(5)."

*In re Diers* above cited.

There was a conflict in testimony as to the following matters which the Court finds not necessary to resolve because not pertinent to the basic issue to be determined:

Whether the parties appeared at Attorney Derivan's office on April 8 or 9, 1980;

The date Plaintiff ascertained she was pregnant;

The date the agreement was actually made—whether the date of execution or prior to that date.

There is no dispute as to the following matters which the Court also finds not pertinent to the basic issue to be determined:

The date of the marriage of the parties.

The date of birth of Sheri.

The time Defendant knew that the Plaintiff was pregnant. (At page two of Defendant's Brief it is stated that the Defendant believed the Plaintiff to be pregnant before the meeting in the office of Attorney Derivan, Attorney for Plaintiff.) He admitted he knew in March she was pregnant.

One factor to be considered is length of marriage of the parties. In this case the parties were married May 3, 1974. This was not a long marriage. The time parties were married is important as to what undue or unfair advantage either took of the other in such a short space of time. This will be discussed in a review of the relative economic circumstances of the parties.

The number of children is a factor only to the extent that Defendant has an obligation, if any, to provide support to the four children Plaintiff had at the time she married the Defendant. Such support would be pertinent only in considering the financial position of the Plaintiff at the time of the divorce if she were left with the responsibility of the support. The parties had no children, issue of their marriage. The birth of Sheri Marie Graham is not pertinent.

Plaintiff testified that she received $600.00 a month social security money for the children (later increased to $800.00). We, therefore, conclude that what money the Defendant was to pay cannot be considered as support for the children. But it can be considered as whether or not it is for support of the spouse.

The nature of the debts will be discussed in review of the relative financial circumstances of the parties which follows and requires detailed comments because of the volume of testimony on this subject.

Another factor to be considered is intent.

In the consideration of intent there are three factors: (1) legislative intent, (2) what the Common Pleas Court Judge intended; and (3) the intent of the parties.

*Legislative intent* is pertinent in interpreting the law as such and in interpreting the law as applied to the facts.

Legislative intent is important in this case as set out in the case of *In Re Sturgell*, 7 B.R. 59 (1980) as hereafter discussed.

*What the Common Pleas Court intended* is at times very difficult to determine. It is a "new ball game" for the Bankruptcy Judge. It could be argued that it is at least inconsistent to permit a Bankruptcy Judge to attempt to explore the inner workings of the mind of a state court judge to determine intention. Where the state judge who issued the opinion is still a judge of that court common sense would indicate that the matter should be sent back to that judge to make the decision as to what was intended by the Order to be alimony and what was not so intended.

What was the intent of a court on incorporating the Separation Agreement as a part of the Decree? Here again we have a situation where no thought is given as to the result if Bankruptcy were to follow. If the agreement seems reasonable the divorce court will usually as a matter of practice approve it and incorporate it into the Decree.

Where there is pending a contempt action before the same judge who issued the Decree but further action on it is delayed until

decision by Bankruptcy Court on discharge-ability it would be so nice for Bankruptcy Judges if Bankruptcy law permitted transfer to the divorce court to determine intent as to alimony or division of property!

The problem in Ohio will not be made any easier because of a July 28, 1982 decision of the Court of Appeals for Wayne County which held that "a judge of a Domestic Relations Court is not required to label his Order as being either a division of assets or sustenance alimony." *Slorgie v. Slorgie,* 5 Ohio App.3d 202; 5 O.B.R. 465.

The *intent of the parties* has caused much difficulty.

A reading of the many decisions of Bankruptcy Judges on this question indicates that, for the most part, the decision was based upon the particular facts of the case. The results have been seemingly conflicting opinions even when using the same or similar criteria.

In many of the cases it is just as difficult for a Bankruptcy Judge to try to determine the intent of the parties as it is to determine the intent of the judge making the decision.

In this kind of cases much has been written in decisions about the intent of the parties.

Few are the cases where either party knows or cares whether it is alimony, support or division of property. Each is interested only in what each will get or have to pay. Possible Bankruptcy has not even been considered. Even if it were many Attorneys preparing Separation Agreements are inexperienced in Bankruptcy matters and cannot be faulted for not being specific as to what is alimony, what is support and what is division of property. This has resulted in hundreds of cases being thrust upon Bankruptcy Courts for decisions.

Even where a Separation Agreement makes specific provisions as to division of property it all too often contains a separate provision (as in this case) for payment of outstanding indebtedness with no mention as to whether such should be considered alimony or division of property.

In the instant case the testimony of the Defendant, his demeanor, and the surrounding circumstances indicated that his reasons for not wanting anything to be considered alimony was more a matter of pride in not wanting it to be said that his ex-wife "stuck him with alimony".

This Court finds it is within the province of this Court to determine what was or was not alimony or division of property with a resulting determination of dischargeability.

Although the labels attached to various payment provisions of an agreement may be useful in determining the parties' intent, they are not controlling. Rather, the Bankruptcy Court must still consider the substantive nature of the Debtor's obligations. [See, e.g., *In re Breaux,* 8 B.R. 218, 3 C.B. C.2d 604 (Bkrtcy.W.D.La.1981); *In re Spong,* 661 F.2d 6, 8 B.C.D. 150, 5 C.B.C.2d 242 (2nd Cir.1981), *In re Hixson,* 23 B.R. 492 (Bkrtcy.1982) ]

Defendant stated he never agreed to pay alimony; never had any intention of paying any and told this to Plaintiff's Attorney. The Court finds that regardless of what the Defendant said this Court by taking into consideration other factors in the case can determine that what the Defendant is to pay is or is not alimony, or is or is not support for the spouse.

Another factor to be considered is the *relative financial circumstances of the parties.*

What assets the Plaintiff had when she married the Defendant May 3, 1974, is difficult to determine. The testimony is very conflicting. Real evidence leaves a lot to be desired.

Plaintiff testified that she had inherited from her deceased husband a house, two cars, and insurance money and had all bills paid at time she married the Defendant; had $15,000.00 in the bank.

But the Defendant testified Plaintiff at time of marriage had in the bank only $1500.00 or $1600.00; that foreclosure was threatened but payments were brought cur-

rent by using his wages to pay arrearage of six months.

The Defendant's Brief stated the real estate had a value of $21,000.00 with a mortgage of only $10,000.00 as listed in Plaintiff's deceased husband's estate the final report in which was dated 1–15–80. (Plaintiff's Exhibit 8.) Plaintiff testified the value was $30,000 to $31,000.

The Middletown Federal Savings and Loan balance on May 3, 1974 was $10,391.03 according to Plaintiff's Exhibit 6.

Even using Defendant's own figures of value at time of dissolution of $38,000.00 with a $22,700.00 mortgage there was an increase in equity of only about $5,000.00. The Plaintiff retained the real estate but monthly payments were $227.00. They had been $86.45 at the time of marriage.

Part of the increase in value was the result of improvements made after the parties were married. Defendant, himself, testified that there was a new furnace—central air conditioning, a new water heater, and a family room in the basement.

Testimony indicated Defendant retained certain guns which he told Plaintiff, according to her testimony, had a value of $1500.00, and included a Winchester, two or three hand guns, an old gun and four rifles or shot guns. Defendant testified he also retained a CB radio and mobile CB.

Defendant failed to list these in his Exhibit A pertaining to property he got.

The *Household Goods* the Plaintiff got. Value as of Dissolution was $1500.00 (lump sum estimate of all) as claimed by Plaintiff (her Exhibit 4) but $4,380.00 as claimed by Defendant (his Exhibit A which listed six items separately with a total of $4,380.00). This difference of $2,880.00 is substantial.

There was testimony concerning some property and payments pertaining to matters not in the Separation Agreement which the Court concludes should be disregarded as should the matter of the fee agreement.

There was great conflict of opinion as to the value of household goods. Plaintiff testified that the values of items as claimed by Defendant in his Exhibit A were not correct; that the values were: $900 for couch, chair, rocker and end-tables, not $1500.00 as Defendant claimed; television was $350.00, not $600.00 (he testified the cost was $750.00 or $800.00); stove $200.00, not $380.00 (Defendant testified cost was $500.00); refrigerator $350.00, not $500.00 (Defendant testified cost was $650.00 to $700.00); and that no bedroom furniture had been bought during the marriage. She did not testify as to the value of what she had had and retained but testified the childrens' bedroom furniture had been paid for by her inheritance money. Defendant testified the bedroom furniture was for Plaintiff's mother.

There was no testimony by any appraiser. No appraisals were submitted in evidence.

The Court concludes that the values were more nearly what Plaintiff claimed. Taking into consideration the fact that the bedroom furniture was the Plaintiff's mother's, the household goods retained by Plaintiff had a value of only $1950.00.

The debts Plaintiff was left to pay was a total of $2,076.00 according to Defendant's Exhibit A. Plaintiff testified the debts to Pennys, McAlpins, and Dr. Zelling were debts she owed before marriage.

The Defendant testified that at the time of the marriage he owed $3,000.00 to the Credit Union and owed no other debts.

*The El Camino:* Defendant got this. At time of Dissolution was valued by Plaintiff (her Exhibit 4) at $1500.00, by Defendant (his Exhibit A) at $700.00. He testified it had to be hauled to junk yard in the Fall of 1980 because of a sugared tank. It is the value at the date of Dissolution that is to be considered. But the testimony of the Defendant is merely another indication of his attitude during the trial.

Plaintiff testified on direct this was bought May 1, 1979, for $1934.00. Paid for by check on joint account (Plaintiff's Exhibit 7). On cross-examination Defendant had *previously* testified the Camino was bought in 1978 for $1800.00; that $1934.00 was not the price—another example of his inconsistent testimony.

Plaintiff said her estimated value was based upon cost.

*The Honda:* Defendant got this. At Dissolution was valued by Plaintiff (her Exhibit 4) at $2,000.00, by Defendant (his Exhibit A) at $900.00, claiming the motor "blew". He testified he paid $2,600.00 for this in 1976. His Exhibit A shows a balance due HFC of $3,000.00.

*The Pontiac* which Plaintiff got was valued by her at $2,000.00 at time of Dissolution (her Exhibit 4). Defendant (his Exhibit A) valued it at $3500.00. He testified that at the time they considered a trade (he did not say when) the value was given to them as $8,000.00. For a 1976 Pontiac this is difficult to believe.

Defendant admitted he could not have known the value because he moved out in 1979 and only saw the car on the street.

The testimony as to the *contribution each made* during the marriage is conflicting.

Plaintiff testified she made $15.00 to $25.00 a week in tips and $300 a month as a baby sitter. Defendant testified tips were never under $100 a week and Plaintiff earned $400.00 a month as a baby sitter. If Defendant is to be believed it means Plaintiff made a greater contribution than she claimed.

Plaintiff testified not very much money of Defendant went into the joint account; that he gave her only $100 a week and kept the rest but the first year he gave her $150.00 a week; that although she handled all money the Defendant knew about all bills; and that all money of hers, what she got from him, what social security money she got—all went into the checking account.

In addition the Plaintiff put into their account on May 1, 1979, $4,129.50 (Plaintiff's Exhibit 9) which money was received by her as mother and legal guardian of her children from the estate of her deceased husband (Plaintiff's Exhibit 8).

*The Plaintiff's bank account* balances brought forth such conflict in testimony that detailed comments are in order.

Testimony of Plaintiff that she had $15,-000.00 in the bank at the time of marriage was disputed by the Defendant who claimed she had only $1500.00 or $1600.00. No documentary evidence was submitted by either party.

There were pre-trial conferences. October 27, 1982 was the first date of a two day trial. One day not being sufficient trial was resumed November 15. There was ample time even between the date of the first day of trial and the second day to secure proof of balances but no such proof was submitted.

On cross-examination Plaintiff testified she had $7500.00 in a savings account and $5,000.00 in a checking account; that she had the expense of burial of her deceased husband. But it was never made clear when she had these amounts in her accounts nor the date of payment of burial expense and from what account paid.

At another point she testified she had $7500.00 in the bank when married; that the mortgage was in arrears; that she used social security money to bring up to date the amount due on the mortgage. It was obvious she was confused and had difficulty in trying to remember. But so was the Defendant.

No explanation was given as to why with money in the bank, she was in arrears in mortgage payments.

The Court finds Plaintiff failed to sustain the burden of proof as to the amount she had in the bank at the time of marriage.

At the time of Dissolution Plaintiff's Exhibit 4 claimed only a $10.00 balance. Defendant's Exhibit 4 claims $500.00. No satisfactory testimony or evidence was presented by either party to support either claim.

### Debts Defendant is to Pay

**Beneficial:**

Defendant testified this debt was incurred to buy "whiskey barrel" furniture at a cost of $900.00.

Paragraph 7 of Stipulation reveals creditor has instituted Municipal Court litigation

against Plaintiff to obtain Judgment on this debt.

*Money, Inc.:*

Defendant testified the money borrowed was to buy other household goods and for expenses of vacations.

Plaintiff testified she went on vacation by herself to Myrtle Beach and paid for it herself; that these parties had only one vacation together and money borrowed was a Mastercard debt; that this Money debt was to refinance a debt Defendant already had before marriage.

Paragraph 5 of Stipulations indicates at least part of this debt was for household goods for which creditor seeks replevin in Municipal Court.

*MasterCard:*

Defendant testified money was used for three separate vacations.

Plaintiff (as stated in review of Money debt) testified as to two vacations, one alone and one with Defendant, and money was borrowed from MasterCard.

### CONCLUSION

It was the intent of Congress and the Code by reason of its general provisions to leave it to the Courts to determine what debts should be excepted from discharge depending upon the facts in each case. We have found no cases where there existed the same facts as in this case.

The Plaintiff received the real estate but with monthly payments far exceeding those she had when these parties were married and a balance due on the mortgage more than twice the amount due when parties were married. The Defendant had the benefit of living in this home during the marriage, however short that period was.

The Plaintiff received household goods of a value less than debts she had to pay, excluding the mortgage debt.

Defendant testified he thought the Separation Agreement was fair—that he "wanted out".

At the time of the Separation Agreement there was no indication that Plaintiff would or could find work to support herself and pay the bills she owed.

■ Regardless of whether the Defendant "refused to pay alimony" and applying all the factors herein discussed in this decision we must find that the four debts in question must be considered as alimony to, maintenance for, or support of the Plaintiff.

This decision is made even taking into consideration the latest pronouncement of the United States Court of Appeals for the Sixth Circuit, decided and filed August 30th, 1983 in the case of *Long v. Calhoun,* 715 F.2d 1103 # 82–3180. This Court has determined "that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable". This decision, further, finds that the Plaintiff has sustained the burden of proof necessary for the findings made herein and that the Court at no time has considered that the Defendant had any burden of proof in regard to matters which were disputed by him. This additional comment is made because the decision necessarily was based upon testimony and evidence which was so conflicting.

Having decided the matter of Dischargeability we now consider that part of the Complaint "that she be granted Judgment against Debtor in the amount of the existing balances of each of the aforementioned obligations". Such a Judgment should be denied for the following reasons:

■ Having found in favor of the Plaintiff as to the non-dischargeability of the debts at issue the matter of the enforcement needed to protect the Plaintiff becomes a matter for the Court which issued the Divorce Decree. A contempt action for failing to comply with the provisions of the Decree is a matter for the state court. For this Court to exercise jurisdiction raises a question of constitutionality because of the decision of the United States Supreme Court in *Northern Pipe Line Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598.

A Judgment shall be set forth in a separate document as required by Rule 921,

Rules of Bankruptcy Procedure, that the outstanding indebtedness owing by the husband to Beneficial Finance; Money, Inc.; and Mastercharge are debts which are non-dischargeable within the meaning of 11 U.S.C. § 523(a)(5), and that the matter of the enforcement of the provisions of the Divorce Decree is remanded to the Court which issued the Decree.

## APPENDIX

In this decision cases are cited as authority for the proposition that what constitutes alimony, maintenance or support is determined by bankruptcy law not state law. Pre-Code case decisions not based upon state law illustrate the differences in the bases and reasoning of the opinions. They are still source material for the determination of issues as in the instant case.

*In Re: Larry Dougherty,* (a decision of this Court in Case # 3–77–1018) was decided before the adoption of the Bankruptcy Code. In that case a debt was found dischargeable but the facts were entirely different than in the instant case. Because of the research made the opinion included reference to many cases as an example of how different fact situations result in such a variety of decisions. To the extent that these cases are not decided upon state law they are still applicable as examples.

In this *Dougherty* case the Court found as follows:

"So many cases start with or have included in the opinion a statement that the decision is based upon the particular facts of the case. Call it axiomatic or redundant, such a statement is particularly applicable to decisions as to dischargeability of alimony.

There are various reasons for this among which are the following.

State laws pertaining to alimony.

Separation Agreements and Court Orders which grant to one spouse or the other rights to property without designating if it is alimony, child support, or division of property rights.

There are cases in which a Bankruptcy Judge thinks he or she cannot 'look behind' the entry which in the state court has granted what is alleged to be alimony.

There are other cases where the Bankruptcy Judge feels obligated to 'look behind' the entry.

Other cases question whether consideration may be given to a separation agreement if it has not been incorporated in the decree.

In other cases the judges seem to inject into decisions philosophical considerations as to the marital relationship. At one extreme of this kind of cases is a line of decisions that holds a mere division of marital property to be akin to property settlement and not alimony. At the other extreme are the cases that follow the theory that the very nature of the marital relationship is such that the portion granted the wife in a divorce decree dividing marital property is granted really for her maintenance and thus alimony. These various types of cases make it difficult to use one or more cases as authority for the conclusion in this instant case. There is such a variance in facts and circumstances.

That Bankruptcy Judges arrive at different conclusions is indicated by the following examples.

Examples of Bankrupt's obligation to pay debts and save wife harmless:

Held non-dischargeable:

*In Re Lawton,* 1 BCD 1533 (WD Mo 1975)

*In Re Guagy,* 1 BCD 1018 (WD Mo 1975) —based on Kentucky decree

*In Re Hernphill,* 1 BCD 1181 (ND Ga 1975)—as to household furniture

Held dischargeable:

*In Re Franklin,* 1 BCD 1166 (ED Tenn 1975)

*In Re Dixon,* 1 BCD 862 (WD Cal 1975)

*In Re Maiman,* 1 BCD 286 (SD Fla 1974)

*In Re Wargo,* 1 BCD 1206 (WD Wash 1975)—except medical bills

But each of the above had different factual details.

Further examples from other jurisdictions:

Following are examples of what has been held to be alimony.

Mere absence of an award of money specifically called "alimony" in a divorce decree does not necessarily compel a finding that the obligation is discharged by Bankruptcy. *Treece v. Treece,* (Okl) 458 P.2d 633 (1969).

It is the obligation based on the duty of a husband to support his wife which is saved from discharge in Bankruptcy under that provision excepting from discharge a debt for alimony due. *Norris v. Norris,* 324 F.2d 826 (1963, CA9 Cal). An agreement that wife should receive $50.00 a month for support was held not dischargeable. *Re Alcorn,* 162 F.Supp. 206.

Suit in Georgia to recover alimony which was part of an Ohio divorce decree was within the exception to discharge, as against contention that the suit on a foreign Judgment is not an action to recover alimony but simply an action on a debt of record. *Martin v. Martin,* 123 Ga.App. 278, 180 S.E.2d 562 (1971).

Where, under property settlement, the husband received residence and real property and business interests, and wife received in excess of $30,000 payable in monthly installments, and agreement provided for execution of mortgages as security for payment of the award and that the obligation was nondischargeable in Bankruptcy, with unpaid installments to terminate on the death of the wife, and provisions of the agreement were incorporated into the divorce Judgment, the sum awarded to the wife was intended to provide for her support and was not dischargeable. *Johnson v. Johnson,* (Okl) 460 P.2d 954 (1969).

*Nelson v. Nelson,* 82 N.M. 324, 481 P.2d 403 held:

Where a divorce decree orders the husband to pay community debts one of which is a tax obligation to the Internal Revenue Service for income taxes, the obligation is not discharged by or even affected by the Bankruptcy proceeding of the husband.

Bankrupt's obligation under a divorce decree approving a property settlement agreement and providing that the husband shall pay to the wife as consideration for and part of the division of community property a stated sum per month during the remainder of her life, was one for support and maintenance and not dischargeable, under evidence indicating that the monthly obligation was in lieu of support and maintenance, and notwithstanding that the agreement purported to cast the obligation as a property settlement. *Martin v. Henley,* 452 F.2d 295 (1971, CA9 Cal).

Where divorce decree adopted a stipulation calling for payments to the wife of $100 per month and payment by the Bankrupt husband of a promissory note, a debt for siding used on the family home, and debts for a television set, an encyclopedia set, and an automobile, and it was shown that the wife's means of support would have been inadequate without such provision, obligations were not discharged in Bankruptcy. *Erickson v. Beardall,* 20 Utah 2d 287, 437 P.2d 210 (1968).

Obligation in divorce judgment of husband to pay note and mortgage upon home awarded to wife was substantially for the support and maintenance of the wife and children and was not released by discharge in Bankruptcy. *Treece v. Treece,* (Okl) 458 P.2d 633 (1969).

Where settlement agreement in divorce action provided that the husband agreed to assume as his own responsibility and to pay listed debts which were joint obligations of the husband and wife, and such debts were secured by household furniture and an automobile in the wife's possession, debts were not dischargeable, particularly where the settlement agreement evidenced an intention to treat such payments as alimony or support. *Re Baldwin,* 250 F.Supp. 533 (1966, DC Neb).

Where the agreement between the husband and wife is called a property settlement and referred to as such in the divorce decree but an examination thereof discloses that the agreement is in fact one for support and maintenance of the wife

and children and not to settle property rights, the debt is not dischargeable. *Henson v. Henson,* (Mo App) 366 S.W.2d 1 (1963)."