HENLEY, Senior Circuit Judge.
 

 Debtors F.R. Murphy and Bonnie J. Murphy appeal the final decree of the bankruptcy court
 
 [1]
 
 allowing the Murphys to reject, under former Chapter XII of the Bankruptcy Act, an executory contract to sell certain real property to defendant C & W Limited Corporation and assessing damages against the Murphys. We affirm.
 

 In May, 1977 the Murphys entered into a contract to sell certain realty, described by the district judge
 
 [2]
 
 as a commercial building, to C & W. The Murphys had purchased the property subject to a lien held by former owner Mary Ann Halter. The contract price for the property was $74,000.00. As required by the terms of the contract, C & W paid $5,000.00 down and three monthly payments of $650.00 each, but was unable to make a balloon payment of $8,050.00 which was due August 3,1977. The parties then negotiated an amended contract whereby in consideration for payment of $4,500.00, C & W’s remaining debt was declared to be $63,978.70, payable at $750.00 per month at 9% interest.
 

 C & W tendered the first $750.00 payment when due on November 3, 1977, but the Murphys refused tender and filed a foreclosure action several days later.
 
 [3]
 
 It appears that C & W ceased making payments at this time. On October 31, 1978 Mary Ann Halter filed a foreclosure action, obtained judgment, and sale was scheduled for November 30,1978. However, the Mur-phys filed a Chapter XII petition on November 29, thereby staying the sale. Halter then filed an adversary complaint, which was referred to the bankruptcy court, seeking relief from the stay. Debtors joined with their answer a third party complaint against C & W, seeking rejection of the contract pursuant to section 413 of the Bankruptcy Act.
 
 [4]
 
 In its answer, C & W agreed to the rejection and asserted a claim for damages for breach of contract. Bankruptcy Act § 63(c).
 

 The bankruptcy court allowed rejection of the contract and assessed damages as follows: $6,950.00 representing the down payment and the three $650.00 payments; $4,550.00 for improvements made by C & W; and $1,018.50 for attorney fees for the defense of both the Halter and Murphy foreclosures. C & W was given a lien on the property, subordinate to Halter’s, for the total damage amount of $12,518.50.
 

 Debtors moved for new trial or for amendment of judgment contending that the court failed to consider the payments
 
 *174
 
 due from November, 1977, when C & W ceased making payments, until the time of rejection; and that the damage award should be reduced by the fair rental value of the land during the time C & W was in possession.
 
 [5]
 
 The bankruptcy court denied debtors’ motion on the ground that debtors breached the contract by refusing tender of the $750.00 payment November 3,1977, and by filing the foreclosure action, thereby releasing C & W from the obligation to tender further payments.
 
 [6]
 
 The court concluded, based on equitable considerations, that debtors were not entitled to interest on the amount due or to fair rental value.
 

 The district court affirmed the findings and conclusions of the bankruptcy court with the exception of the attorney fees representing the defense of the Murphy foreclosure.
 
 [7]
 
 The bankruptcy court subsequently entered its final decree on October 3, 1981, in accord with the district court’s decision.
 
 [8]
 

 On appeal, debtors contend that the bankruptcy judge erred in awarding damages because C & W did not file a proof of claim; and in assessing damages based on a concept of rescission. The issue of the proof of claim filing requirement was first presented to the district court, where it was concluded that a formal proof of claim was not necessary in the context of this adversary proceeding because it would only duplicate the information contained in the pleadings. In the absence of evidence showing any prejudice to debtors or other creditors, we will not disturb this conclusion.
 

 With respect to debtors’ contention concerning the bankruptcy court’s basis for assessing damages, we note that the argument has been modified somewhat since debtors’ motion for new trial. Although debtors initially argued that they were entitled to fair rental value and interest, thus implying an acceptance of rescission as the basis for computation, debtors are now arguing that the bankruptcy court erroneously applied principles of rescission.
 
 [9]
 
 Instead, debtors now assert, the court should have applied section 63(c) of the Bankruptcy Act which states that rejection of an executory contract constitutes a breach of contract as of the date the petition is filed.
 

 We agree that rejection of an ex-ecutory contract in accordance with applicable provisions of the Bankruptcy Act is not the equivalent of rescission.
 
 Consolidated Oil & Gas, Inc. v. Sun Oil Co. of Pennsylvania,
 
 16 B.R. 490, 493 (D.C., D.Co.1981). Rather, as stated, rejection constitutes a breach of contract, and a person injured thereby is deemed a creditor and is entitled to assert a claim for damages. Bankruptcy Act § 458.
 
 [10]
 
 However, we need not determine whether the bankruptcy judge did, in fact, apply principles of rescission in com
 
 *175
 
 puting the award to C & W, because debtors have not shown that a damage award based on any established measures of damages for breach of contract would result in a significantly different amount. On the contrary, there is some evidence that a computation of damages properly based on the fair market value of the property would yield substantially the same amount.
 
 [11]
 

 We conclude that the amount awarded by the bankruptcy judge was not clearly erroneous. Accordingly, the decree of the bankruptcy court is affirmed.
 

 [1]
 

 . The Honorable Charles W. Baker, Bankruptcy Judge, United States Bankruptcy Court, Eastern and Western Districts of Arkansas.
 

 [2]
 

 . The bankruptcy court’s initial order, entered April 9, 1979, was affirmed in part and reversed in part by the district court (The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas) and remanded to the bankruptcy court. It is the bankruptcy court’s subsequent final decree from which, by agreement approved by the bankruptcy court, debtors now appeal.
 

 [3]
 

 . The bankruptcy judge noted that this action was never tried.
 

 [4]
 

 . Because the bankruptcy petition was filed before the new Bankruptcy Code became effective on October 1, 1979, all citations to applicable bankruptcy provisions will refer to those in effect at the time the petition was filed.
 

 [5]
 

 . It appears that C & W surrendered possession soon after Halter obtained judgment in her foreclosure action.
 

 [6]
 

 . We note that it has been held that a breached contract cannot be rejected, but that acquiescence to rejection can constitute a waiver of the former breach and an election to rely on the damage remedy for rejection.
 
 Consolidated Oil & Gas, Inc. v. Sun Oil Co. of Pennsylvania,
 
 16 B.R. 490, 494 (D.C., D.Co.1981). However, because we conclude that the amount awarded by the bankruptcy court is not clearly erroneous, we consider harmless any error in declaring the contract breached as of November, 1977.
 

 [7]
 

 . The district court upheld the award of fees for the defense of the Halter foreclosure on the ground that debtors were contractually obligated to defend title against third parties.
 

 [8]
 

 . In its final decree, the bankruptcy court noted that the property has been sold and that a portion of the proceeds sufficient to cover the judgment in this case has been placed in trust pending final resolution.
 

 [9]
 

 . Although characterized as damages by the bankruptcy court, the award consisted primarily of the return of monies paid by C & W. We note also that the district court described the rejection of the contract as a rescission and analyzed the award based on cases involving rescission.
 

 [10]
 

 . Although we do not find any basis either in the contract or in the applicable bankruptcy provisions for granting C & W a lien for the amount of damages,
 
 see In re New York Investors Mutual Group, Inc.,
 
 143 F.Supp. 51, 54 (S.D.N.Y.1956), no objection was raised and we find no evidence in the record of any resulting prejudice to other creditors.
 

 [11]
 

 . Debtors assert that the fair market value of the property at the time of the breach was $75,000.00, approximately the same as the value of the contract as amended. Thus, an award of damages based on the difference between fair market value and the amount still owed on the contract would be roughly equal to the amounts paid by C & W.
 
 See Green v. Ferguson,
 
 263 Ark. 601, 567 S.W.2d 89, 91 (1978).