14 F.3d 595
 62 USLW 2435
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: Frank G. LAWSON, Debtor.
Susanna C. Lawson, Individually and as Guardian of Frank
Lawson; Kimberly Lawson, Plaintiffs-Appellants,
v.
Frank G. Lawson, Debtor-Appellee.
In re: Frank G. Lawson, Debtor.
Frank G. Lawson, Plaintiff-Appellant,
v.
Susanna C. Lawson, Individually and as Guardian of Frank
Lawson, Jr.; Kimberly Lawson, Defendants-Appellees.
 Nos. 92-2154, 92-2163.
 United States Court of Appeals, Fourth Circuit.
 December 9, 1993.
 
 H. Jason Gold, Gold & Stanley, P.C., for Appellants.
 William Bruce Gair, Porter & Gair, P.C., for Appellee.
 Loraine E. O'Hanlon, Gold & Stanley, P.C. for Appellants.
 E.D.Va.
 AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
 Before MURNAGHAN and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Appellants Susanna, Kimberly, and Frank Lawson, Jr., the wife and children of Frank Lawson, Sr., appeal from an order of the bankruptcy court, confirmed by the district court, declaring a post-nuptial agreement to be an executory contract and capable of rejection by the debtor/appellee, Frank Lawson, Sr. While still married, Frank Lawson, Sr. and Susanna Lawson signed a post-nuptial contract which stated that, in the event of divorce, all real property owned jointly by the couple would be transferred to a trust to be held for the benefit of the couple's children (Kimberly and Frank, Jr.) and their heirs. Subsequently, in 1989, the couple separated and filed for divorce, but, on January 22, 1991, one day before the judgment of divorce was to be entered, Frank Lawson, Sr. filed a petition for voluntary bankruptcy under Chapter 11. The bankruptcy court permitted Frank Lawson, Sr.'s rejection of the post-nuptial agreement, deciding that it was an executory contract. The district court affirmed. Susanna and her children contend on appeal that the post-nuptial agreement does not qualify as an executory contract under the terms of the bankruptcy code, and that, even if it does, the post-nuptial agreement constitutes a non-dischargeable obligation.
 
 
 2
 Because the underlying facts of this case are unique, we recount them in some detail.
 
 
 3
 Frank Lawson, Sr. and Susanna were married in 1973, and subsequently had two children, Kimberly and Frank, Jr. On June 16, 1981, Frank and Susanna entered into a post-nuptial agreement. The agreement began by listing four pieces of real property and designating them to be the community property of the couple. It went on to state that:
 
 
 4
 4. The parties to this agreement desire to make provisions for these four pieces of property and any others that they may hold in the future as their community property in the event their marriage is dissolved for whatever reason.
 
 
 5
 II. In the event FRANK G. LAWSON and SUSANNA C. LAWSON become divorced, all pieces of real property owned by them as their community property, including the four pieces of real property mentioned above or the traced proceeds from the sale of said real properties, shall be deeded to CALIFORNIA FIRST BANK, as Trustee, to be held, managed and distributed as hereinafter provided[.]
 
 
 6
 The agreement then outlined the terms of the trust. It directed the Trustee to provide for the "proper support, care, maintenance and education" of the children as long as they were under the age of twenty-one by paying the children "as much of the net income and principal of the trust as the Trustee in the Trustee's discretion deems necessary." Under the agreement, the corpus of the trust was to be divided in equal shares and distributed to the children in thirds as they reached the ages of 25, 30, and 35.
 
 
 7
 On September 8, 1981, Frank and Susanna added an addendum to the post-nuptial agreement, which provided that pension plans and retirement benefits, including military retirement benefits, derived by either party throughout the marriage would be considered community property, notwithstanding any case law to the contrary.
 
 
 8
 The properties listed in the post-nuptial agreement had been purchased with loans from Susanna Lawson's parents, Ngar Nam Chung and Chan Ying of Hong Kong. The Lawsons lived in two of the four properties for a period of time, but purchased the other two as rental investments. Later all four properties were converted to rental properties. After the post-nuptial agreement was entered into, Frank and Susanna Lawson executed joint promissory notes in favor of Susanna's parents confirming their indebtedness for the amounts received, and began paying back the funds with proceeds of the rentals.
 
 
 9
 In 1989, Susanna initiated divorce proceedings against Frank Lawson, Sr. Her Bill of Complaint alleged cruelty and desertion, and the Cross-Bill of Complaint also charged cruelty and constructive desertion. A Commissioner's hearing as to the grounds for the divorce was conducted in December 1990. At the hearing, counsel for Susanna Lawson moved to allege an additional ground for divorce, voluntary separation for one year, as the couple had ceased co-habitating in August 1989. The Commissioner found insufficient evidence of cruelty and desertion, although he noted that the primary cause of the voluntary separation was Frank Lawson, Sr.'s "outbursts of temper" and "sometimes brutal treatment of the children," which resulted in a deterioration of the marriage relationship. The Commissioner recommended that Susanna Lawson be granted a final decree of divorce, a vinculo matrimonii, and scheduled a hearing for entry of a final divorce decree and determination of property settlement for January 23, 1991.
 
 
 10
 One day prior to the scheduled entry of divorce, Frank Lawson, Sr. filed a voluntary petition under Chapter 11 of the Bankruptcy Code.[1] He listed as potential creditors his wife's parents, stating claims of $474,793 in personal loans from them. In June of 1990, Susanna's parents had filed three lawsuits against Frank and Susanna, claiming in excess of $258,421 due on the promissory notes signed by them for the monies advanced to buy the properties. Other than the money owed to the in-laws, Frank Lawson, Sr. listed only about $6,000 worth of debt.
 
 
 11
 Frank Lawson, Sr.'s Amended Plan of Reorganization provided for the sale of the four rental properties in order to satisfy the debts to the in-laws. The proposed sales were estimated to produce about $62,000 more than what was needed to pay all claims, taxes and expenses, which amount would be paid over as directed by the circuit court in the equitable distribution proceedings in the divorce case, with Susanna Lawson being given credit to the extent that joint funds from the sales of the real property were used to pay Frank Lawson, Sr.'s individual debt. The Plan rejected the post-nuptial agreement as an executory contract under 11 U.S.C. Sec. 362(a) since the divorce had not yet occurred. The Plan did not provide for alimony, but provided child support for the one minor child.
 
 
 12
 Appellants Susanna Lawson and her two children filed a declaratory action in the Bankruptcy Court for the Eastern District of Virginia, seeking enforcement of the post-nuptial agreement, alleging that it created a debt in the nature of maintenance and child support which was non-dischargeable in bankruptcy under 11 U.S.C. Sec. 523(a)(5). Debtor-appellee Frank Lawson, Sr., seeking to reject the post-nuptial agreement, argued that the agreement was an executory contract, and that his continued liability on the notes to Susanna Lawson's parents warranted retention of the bankruptcy estate's interest in the property that is the subject of the post-nuptial. After a hearing, the bankruptcy court decided in a decision rendered from the bench that the post-nuptial agreement was an executory contract, and took under advisement the issue of whether it could be rejected. The court requested and received supplemental briefs on the issue of rejection of the agreement and decided in favor of Frank Lawson, Sr. several months after the hearing. It also decided that the obligation was not non-dischargeable as support under Sec. 523(a)(5), because the debtor's obligation under the post-nuptial contract had not yet been determined by the state court, and had not even arisen because the condition precedent --the divorce--had not occurred. The District Court for the Eastern District of Virginia affirmed the Bankruptcy Court's decision, but remanded the case to the Bankruptcy Court for a"determination[ ] on any issue not resolved by the Court in the original proceeding."
 
 
 13
 The remand pertained to Frank Lawson, Sr.'s contention that the bankruptcy court had been requested to enter judgment for the plaintiff and against the defendant with respect to damages, but failed to do so. Susanna Lawson's action had asked for damages for breach of contract if the agreement was found to be rejected as an executory contract. She claimed $750,000 on her own behalf, and $500,000 on behalf of each of the children. However, she did not produce any evidence of damages at trial. Because there was nothing in the record as to damages, the district court included the order of remand to "clear up" any unresolved issues.
 
 
 14
 Susanna Lawson and her children herein appeal the district court's order. She contends that the post-nuptial agreement is not executory and therefore not subject to rejection under 11 U.S.C. Sec. 365(a). She claims in the alternative that whether the agreement is executory or not, it is non-dischargeable under 11 U.S.C. Sec. 523(a)(5) because it is "in the nature of child support."
 
 
 15
 The case presents us with the application and interaction of two different provisions of the bankruptcy code, Secs. 365(a) and 523(a)(5). Under section Sec. 365(a), a trustee or debtor-in-possession, subject to the court's approval, may assume or reject any executory contract. 11 U.S.C. Sec. 365(a); 11 U.S.C. Sec. 1107(a). To determine whether a contract may be rejected under Sec. 365 a court's proper inquiry is first to determine whether the contract is executory and if so, whether its rejection would be advantageous to the estate. Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, 756 F.2d 1043, 1045 (4th Cir.1985), cert. denied, 475 U.S. 1057 (1986). Rejection constitutes a breach of the contract, 11 U.S.C. Sec. 365(g), and gives rise to a claim for damages by the injured party. See In re Jolly, 574 F.2d 349, 351 (6th Cir.1978) (debtors may reject executory contracts but only at the cost of any damage rejection may cause); In re Terrell, 892 F.2d 469, 471 (6th Cir.1989) (after rejection, consequences of a failure to perform remaining obligations under a contract is an issue of state contract law).
 
 
 16
 The bankruptcy code does not define an executory contract, but the Fourth Circuit has adopted the generally accepted test for executoriness articulated by Professor Vern Countryman. Under that test, an executory contract is one under which the "obligations of both the bankrupt and the other party to a contract are so far unperformed that the failure of either to complete performance would constitute material breach, excusing the performance of the other." Lubrizol Enterprises, 756 F.2d at 1045 (quoting Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973)). The parties dispute the application of this definition to the post-nuptial agreement.
 
 
 17
 The second provision we must consider is one that acts to mitigate the debtors' chance at a "fresh start" promoted by Sec. 365 by excepting certain obligations from dischargeability. Under 11 U.S.C. Sec. 523(a)(5), a debt is not dischargeable if it is owed to a
 
 
 18
 spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, ... or property settlement agreement, but not to the extent that--... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]
 
 
 19
 The exception from discharge for support has long been an accepted aspect of bankruptcy law. See Wetmore v. Markoe, 196 U.S. 68, 77 (1904) (bankruptcy law should not be an instrument to deprive dependent wife and children of support and maintenance due them); Forsdick v. Turgeon, 812 F.2d 801, 804 (2nd Cir.1987) (section 523(a)(5) reflects congressional preference for the rights of spouses to alimony, maintenance or support over the rights of debtors to a fresh start).
 
 
 20
 The intersection of Secs. 365(a) and 523(a)(5) is one not often encountered. Although there exists extensive case law addressing whether a contract is executory and therefore capable of rejection, and a large body of law dealing with whether a debt is in the nature of child support and is therefore non-dischargeable, we have found scant authority on the question of whether a contract creating obligations in the nature of child support, if executory, is subject to rejection or is, instead, non-dischargeable.[2] But see Draper v. Draper, 48 B.R. 37, 40 (Bankr.E.D. Ark.1985), aff'd, 790 F.2d 52 ( 8th Cir.1986) (obligations deemed in the nature of support were non-dischargeable, and therefore rejection was not allowed, even though obligation was executory). The difference, of course, lies in the relief available to the plaintiff or plaintiffs. If the contract is executory and may be rejected, the plaintiff then has a claim for damages for breach of the contract. If the contract, though executory, is non-dischargeable, then the plaintiff is entitled to specific performance.
 
 
 21
 The bankruptcy court and the district court both considered the executory nature of the post-nuptial agreement to preclude a look into whether the obligations contained therein constituted a debt for support that was non-dischargeable under Sec. 523(a)(5). We disagree. Given the very peculiar facts of this case, we consider the question of the non-dischargeability of an obligation claimed to be in the nature of support to be prior to, rather than subject to, the executory nature of a support agreement. In this instance, the executory status of the contract was artificially prolonged by the timing of the bankruptcy petition. When the bankruptcy petition was filed, the Lawsons' divorce was all but complete. The parties had filed for divorce, had lived separately for one year, and had attended a hearing to establish grounds for divorce. The Commissioner in Chancery had made his recommendation that the couple be granted a divorce, and had set a date and time certain for judgment to be entered. One day before that date, Frank Lawson, Sr.'s bankruptcy petition forestalled the entry of divorce, and thereby stopped the normal and certain course of events that would have rendered the contract non-executory.
 
 
 22
 It is perhaps speculative at this point whether, had the divorce decree been entered, the state court would have considered the post-nuptial obligations to be in the nature of support and would have incorporated the agreement into the divorce decree and property settlement.[3] It is certain, however, that but for the timing of the bankruptcy petition, the decree of divorce would have been entered, at which point the obligations in the post-nuptial agreement would have been triggered, making any question of executoriness moot. Moreover, it is beyond doubt that the dissolution of the marriage has, in the sense contemplated by the Lawsons when they wrote their agreement, effectively occurred. The technical finalization of the divorce by entry of the final judgment is not only imminent, but inevitable.
 
 
 23
 Had Frank Lawson, Sr. waited two days before filing his bankruptcy petition, the fate of the obligations contained in the post-nuptial agreement would turn on whether they constituted a debt in the nature of support and thereby became non-dischargeable under Sec. 523(a)(5). Where an agreement is in fact one for support, the executoriness test should not be applied in such a way as to reward the debtor for filing a petition immediately before entry of a final divorce decree, thus wiping out a support agreement entered into years before. Given that an impending divorce may well coincide with financial instability and often leads to supernumerary efforts to avoid financial obligations agreed upon in more halcyon days, it seems inadvisable to hitch the enforceability of a post-nuptial support agreement upon whether a bankruptcy petition is filed immediately before or after entry of a final divorce decree. To permit such an agreement to be voided by a strategic filing of a bankruptcy ignores the objectives of bankruptcy law and would frustrate the very purpose marital agreements are entered into--to arrange and settle, long before problems arise, the means by which a couple may provide for a dependent spouse or children.
 
 
 24
 Accordingly, we consider the question of executoriness of the Lawsons' post-nuptial agreement to be irrelevant to the inquiry into its non-dischargeability, since the question under Sec. 523(a)(5), dealing with support, remains. Cf. Cohen v. Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 696 (Bankr.S.D.N.Y.1992) ("the threshold requirement of 'executoriness' is not merely unnecessary, but leads to error"); In re Leibinger-Roberts Inc., 105 B.R. 208, 211 (Bankr.E.D.N.Y.1989) ("although the shareholders' agreement as adopted by the debtor may have been an executory contract at one time, the present facts of the case ... ha[ve] changed the nature of the agreement.... When a debtor cannot reap any present or future benefits from a contract due to a change in circumstance, the contract's life as an executory contract comes to an end").[4]
 
 
 25
 We proceed, then, to the question of whether the obligations contained in the Lawsons' post-nuptial agreement are non-dischargeable under Sec. 523(a)(5). To qualify under this section, a "debt" must be owed to the spouse or child for alimony, maintenance or support. Section 523(a)(5)(B) qualifies the exception from dischargeability by noting that, although a liability may be designated as alimony, maintenance or support, the exception does not apply unless the liability "is actually in the nature of" support. The code gives no guidance as to how to determine whether a debt "is actually in the nature of" support, but case law has specifically distinguished support from a property settlement or equitable division of marital property. See Melichar v. Ost, 661 F.2d 300, 303 (4th Cir.1981), cert. denied, 456 U.S. 927 (1982) ("The proper test of whether the payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement."); Tilley v. Jessee, 789 F.2d 1074, 1077-78 (4th Cir.1986) (party seeking to prove non-dischargeability of a debt underSec. 523(a)(5) must prove that the parties mutually intended to arrange for a payment that would serve as support, not a property settlement).
 
 
 26
 As a threshold matter, Frank Lawson, Sr. has contended that the post-nuptial agreement cannot qualify as a "debt" under Sec. 523(a)(5) because the divorce has not yet occurred and so no debt has yet arisen. The bankruptcy court seemed to agree, noting that "the contract itself does not impose any obligation upon the debtor until a divorce occurs." This argument merely restates the earlier contention that the contract is executory. Moreover, Sec. 523(a) does require a "debt," but "debt" is not so narrowly defined by the bankruptcy code as to refer solely to claims already reduced to judgment by a state court.[5] Thus the contention that the post-nuptial agreement is not a debt as contemplated by Sec. 523(a)(5) simply assumes the point we are here to decide.
 
 
 27
 Frank Lawson, Sr. next has contended, and the bankruptcy court agreed, that the post-nuptial agreement cannot qualify under Sec. 523(a)(5) because it has not been given effect by the state court in a divorce decree and is not owed "in connection with" a separation agreement or property settlement.
 
 
 28
 We reject such a position. First, we agree with those courts that have adopted a broad reading of Sec. 523(a)(5) and hold that "genuine support obligations are not to be discharged," even though they may arise independent of the legal dissolution of a marriage. Shine v. Shine, 802 F.2d 583, 588 (1st Cir.1986) (state court's order that the debtor pay his wife for separate maintenance, though not embodied in a separation agreement, divorce decree, or property settlement, was a non-dischargeable debt under Sec. 523(a)(5)). See also In re Bowers, 43 B.R. 333, 334 (Bankr.E.D.Pa.1984) (fact that post-nuptial agreement was not incorporated into the divorce decree was not relevant to determination of whether the obligation contained therein was actually in the nature of alimony); In re Morris, 14 B.R. 217, 218 n.3 (Bankr.D. Colo.1981) ("in connection with" clause of Sec. 523(a)(5) "imposes only the weakest of causal requirements"); In re Pierson, 47 B.R. 258 (Bankr.D.Neb.1985) (debt arising out of paternity suit found non-dischargeable though not in connection with a divorce or property settlement). We recognize that some bankruptcy courts have decided otherwise, and that even those courts that have read Sec. 523(a)(5) broadly have generally dealt with obligations that, while not originating in a divorce decree or arising in tandem with a marriage dissolution, have been given effect by a state court order of some kind. However, as mentioned before, we contend with unique circumstances. Frank Lawson, Sr., by filing his bankruptcy petition a day before the entry of the divorce decree, has elected the federal bankruptcy court as his forum for determination of the dischargeability/support issue. The issue is, of course, one of federal bankruptcy law, not state law, and is one which is necessary for confirmation of the proposed plan. See In re Gianakas, 917 F.2d 759, 762 (3rd Cir.1990) (federal bankruptcy law controls the determination of whether a support obligation is in the nature of support). Moreover, it is not necessary that an obligation be recognized by state law as one for support in order to be deemed "actually in the nature of support" and therefore non-dischargeable by a bankruptcy court under Sec. 523(a). Melichar, 661 F.2d at 303; In re Yeates, 807 F.2d 874, 878 (10th Cir.1986). State law is, of course, relevant to the determination of the character of the obligations, see In re Long, 794 F.2d 928, 931 (4th Cir.1986), and if the entry of divorce and determination of the equitable distribution had taken place before the filing of the bankruptcy petition, we would consider the state court's characterization of the obligations. The fact that Frank Lawson, Sr.'s filing of the bankruptcy petition has denied us the guidance of the state court does not, however, preclude us from making the determination in the first instance.
 
 
 29
 In Tilley v. Jessee, 789 F.2d 1074, this court determined that a party seeking non-dischargeability of an obligation as support, must, as a threshold matter, prove that both parties mutually intended at the time of the agreement to arrange for maintenance or support rather than simply to divide the marital property. The Tilley court considered not only the settlement agreement as evidence, but also received testimony from both parties. Applying Melichar, 661 F.2d 300, which held that the substance of an agreement rather than the terms affixed to it controls whether an obligation is non-dischargeable alimony, the Tilley court decided that the agreement itself, despite its separate and distinct sections dealing with "alimony" and"property," was not dispositive. However, the agreement "erected a substantial obstacle" to the plaintiff's efforts to prove that the entire agreement was intended to function as support, and the plaintiff failed to surmount that obstacle. Tilley, 789 F.2d at 1078. Her testimony that her intent in signing the agreement was to secure support and that she in fact used the money as support was offset by the defendant's testimony that he drafted the agreement in an effort to regain full control of jointly held property and that he treated the payments as non-deductible for income tax purposes as opposed to deductible alimony. Because the presumption created by the agreement itself was so strong, and because the plaintiff's testimony did not prove a mutual intent to provide support, the court found it unnecessary to consider the additional factors that the district court had noted as relevant to the determination. Id. at 1078 n.4. It did not, however, preclude consideration of other factors in making the determination of whether an obligation was truly in the nature of support.
 
 
 30
 In the instant case neither the bankruptcy court nor the district court has made any findings of fact with respect to the intent of the parties when they wrote the agreement, since neither court reached the issue. We have before us, however, the agreement itself and the testimony of Susanna Lawson. Following the lead of the Tilley court, and keeping in mind that the party seeking an exception from dischargeability must prove by a preponderance of the evidence that the obligation was intended by the parties as support, we will first look to the agreement to try and discern the parties' intent. Although an agreement standing alone is not necessarily dispositive, it may produce a presumption, which, if collaborated by the testimony, will be enough to establish intent. See Tilley, 789 F.2d at 1078 (agreement is persuasive evidence of intent; where agreement stated emphatically that it was dealing with issues of alimony and property settlement separately, it established presumption that payments contained in property settlement section were not intended as support). We will treat the purported spousal support provision (the military retirement benefits) and the purported child support provision (the joint obligation to sign property over to a trust) separately.
 
 
 31
 In an amendment to the post-nuptial agreement, Frank Lawson, Sr. and Susanna Lawson agreed that "all pension plans and/or retirement benefits, including military retirement benefits, derived by either of us during our marriage will be community property in all respects despite any case law, including the recent U.S. Supreme Court decision in McCarty v. McCarty; [sic] to the contrary existing presently or decided in the future."[6] By designating the benefits as community property, the couple was clearly attempting to preclude a state court from designating the retirement benefits as the husband's separate property, in the event the couple divorced in a community property state. The provision would insure that Susanna Lawson, if divorced in a community property state, would be entitled to a one-half interest in the benefits.[7]
 
 
 32
 The post-nuptial agreement itself reveals little about whether the couple intended Susanna's one-half interest in the pension plans and retirement benefits to function as a means of support for Susanna Lawson, or whether they viewed the designation of the benefits as community property to be a property division. The abstruseness is not surprising. As a number of courts have noted, "Few are the cases where either party knows or cares whether it [the debt] is alimony, support or [a] division of property. Each is interested only in what each will get or have to pay." In re Jenkins, 32 B.R. 978, 982 (Bankr.S.D. Ohio 1983); In re MacDonald, 69 B.R. 259, 268 (Bankr.D.N.J.1986) ("Since the parties typically have no actual intent to make the distinction we must usually establish their constructive intent from the facts and circumstances of the case.") (quoting In re Alloway, 37 Bankr.420, 425 (Bankr.E.D.Pa.1984)).
 
 
 33
 When an agreement is ambiguous or non-dispositive as to the mutual intent of the parties, the court may take into consideration other factors. See Melichar, 661 F.2d at 302 (reviewing testimony of both parties); Tilley, 789 F.2d at 1078 n.3 (considering the fact that the payments would continue despite remarriage of wife to be "in direct contrast" to usual support arrangement); Yeates, 807 F.2d at 878 (where agreement is unclear, court must look to extrinsic evidence of intent); In re Stone, 79 B.R. 633, 638 (Bankr.D. Md.1987) (following Melichar and Tilley and listing 18 factors that may be considered in attempt to discern the parties' intent including need for support at time of award, whether debtor's obligation ceases upon death or remarriage, the standard of living of parties during marriage); In re Beiler, 80 B.R. 63, 64 (Bankr.E.D. Va.1987) (considering the facts that the wife did not report the disputed debt as income and husband did not take a deduction for the payments to be probative evidence of intent).
 
 
 34
 Looking to Susanna Lawson's testimony, we find a bald statement that the couple added the retirement benefits provision "so we would have some kind of support for me." We do not think that the statement, though unrebutted, establishes proof of the parties' mutual intent to provide support.
 
 
 35
 Susanna Lawson has submitted no other testimony or evidence that would help establish that the agreement was intended as support for her. She has not offered evidence of her financial need, of the age, work skills and educational level of the parties, or the financial resources of each spouse. See In re Stone, 79 B.R. at 638 (listing those factors as some of the 18 factors that provide"additional tool[s] for the court to use in extracting the intention of the parties"). Although the Fourth Circuit has not had occasion to adopt a definitive list of factors that, when the agreement is not clear, can be considered in determining whether the intent was to provide support or simply to divide property, we have not precluded a plaintiff from introducing evidence that would assist the court in discerning the intent. Susanna Lawson has simply not carried her burden of proof. Thus we hold that the portion of the post-nuptial provision that designates military retirement benefits as community property is a dischargeable obligation because Susanna Lawson has not proven that it is an obligation that is "actually in the nature of support."
 
 
 36
 Turning to the provision in the post-nuptial agreement that designated the Lawsons' real property as community property, and obligated the couple to sign it over to a trust for the benefit of the children in the event of divorce, we note that the terms of the trust instructed the trustee to pay to the children, until they reach the age of 21, "as much of the net income and principal of the trust as the Trustee in the Trustee's discretion deems necessary for their proper support, care, maintenance, and education."
 
 
 37
 We find that the agreement itself provides evidence that the parties mutually intended to provide support for the children in the event of divorce. The agreement does not divide property between the divorcing parties, nor obligate one party to pay to the other money to be used to support the children, but obligates both of them to give up jointly-owned property for the "support, care, maintenance, and education" of the children. In this sense, it differs from the traditional form of child support, whereby one parent receives money from the other to be used for the children. But the fact that the couple chose to provide the support of the children by way of an inter vivos trust does not take the agreement outside the purview ofSec. 523(a)(5). Nor does the fact that the agreement does not provide for a sum certain to be paid to the children periodically, but rather leaves that to the discretion of the Trustee, defeat its status as child support. Child support payments may take a variety of forms. See In re Ferebee, 129 B.R. 71, 74 (Bankr.E.D. Va.1991) ("This court sees no good reason why the parties in this case should not be able to freely structure their post nuptial agreements according to their needs, so long as their mutual intent remains clear."). Finally, the facts that one child is no longer a minor, and that the trust provides for payment of the principal to the offspring in their later years, do not make the agreement dischargeable. As noted previously, a bankruptcy court's determination of the nature of an obligation as support need not depend upon whether the initial creation of the obligation would have been required under state support law. See, e.g., In re Harrell, 754 F.2d 902, 905 (11th Cir.1985) (debtor's obligation under a separation agreement to pay his son's college expenses held to be nondischargeable support under Sec. 523(a)(5) even though debtor was not required under state law to support his son past the age of majority); Boyle v. Donovan, 724 F.2d 681, 683 (8th Cir.1984) (where court found that the parties intended their agreement to function as support, the fact that state law did not require the undertaking did not make the obligation dischargeable); In re Yeates, 807 F.2d at 878. We therefore hold that the Lawsons' post-nuptial agreement contains a non-dischargeable debt in the nature of child support.
 
 
 38
 Accordingly, while the district court's order confirming the bankruptcy court's order as it refers to Susanna Lawson's claims is affirmed, insofar as support for the children is called for is concerned, it is reversed and remanded with instructions to remand to the bankruptcy court for entry of an order in accordance with this opinion.
 
 
 39
 AFFIRMED IN PART AND REVERSED AND REMANDED IN PART, WITH INSTRUCTIONS
 
 LUTTIG, Circuit Judge, dissenting:
 
 40
 The only question addressed by the bankruptcy and district courts, and therefore the only question before us, is whether Mr. Lawson, acting as the debtor in possession and exercising the trustee's powers, see 11 U.S.C. Sec. 1107(a), could reject the Lawsons' post-nuptial agreement under 11 U.S.C. Sec. 365(a). Because the agreement was an executory contract, and it is uncontroverted that rejection was an exercise of reasonable business judgment, see Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1046-47 (4th Cir.1985), cert. denied, 475 U.S. 1057 (1986), I conclude that it was properly rejected under section 365(a). Accordingly, I would affirm the judgment of the district court.
 
 I.
 
 41
 The majority agrees that the contract was executory, see ante at 8 n.2, but concludes, for its own policy reasons, id. at 9, that in this one case the dischargeability of the putative support agreement should be considered "prior to" the rejectability of the agreement, id. at 8, thus consigning to "irrelevancy" the question of whether the agreement was executory and rejectable under section 365, id. at 10. It then holds, admittedly without the benefit of any findings by the courts below as to the parties' intent, id. at 13, that the couple intended the assignment of their real property to a trustee for the benefit of their children upon divorce (but not their military retirement benefits) as a "debt" for the "support" of the Lawsons' children that was incurred "in connection with a separation agreement [or] divorce decree," which is non-dischargeable under section 523(a)(5).
 
 
 42
 There is no authority for holding, as the majority does, that section 365(a) is irrelevant if the contractual debt is for spouse or child support. That the majority recognizes as much is plain from the lengths to which it goes to limit its holding to the "very peculiar facts of this case," id. at 8. Footnote 4 is especially revealing in this regard. There, the majority suggests that a "different analysis" might be necessary if a post-nuptial agreement were to become effective"after entry of a final decree of divorce," rather than "upon divorce," which only occurs upon entry of a final divorce decree. It even suggests that a different analysis might be required were the bankruptcy petition filed earlier in the divorce proceedings than was Mr. Lawson's. There is, of course, no principled basis for such distinctions in either section 523 or section 365.
 
 
 43
 The unfortunate consequence of the majority's opinion is not the result it reaches in this particular case, but rather, the violence it does to the law in its effort to reach that result. Because it concludes that the post-nuptial agreement was executory and therefore rejectable under section 365, it must construe sections 523 and 365 as mutually exclusive. That is, it must hold, as it does, that if an executory agreement is non-dischargeable, then it cannot be rejected. Thus the analytically nonsensical question to which it addresses itself: "whether a contract creating obligations in the nature of child support, if executory, is subject to rejection or is, instead, non-dischargeable?" Id. at 8.
 
 
 44
 Rejection and discharge, however, are wholly independent, separate processes that serve distinct and unrelated purposes in bankruptcy. And each action carries with it different consequences for the debtor and his estate. This is why the majority is unable to find any authority on the "intersection of Secs. 365(a) and 523(a)(5)." Id. at 7.
 
 
 45
 The purpose of rejection is to allow the debtor to relieve himself from the burdensome future obligations of a losing contract; the consequences of rejection are that the debtor is deemed to be in breach of his executory contract and the non-breaching party is vested with a claim that may be incorporated into the plan and eventually discharged. See 11 U.S.C. Sec. 365(g); In re Register, 95 B.R. 73, 74 (Bankr.M.D. Tenn.1989); In re Jolly, 574 F.2d 349, 350 (6th Cir.), cert. denied, 439 U.S. 929 (1978). The breaching party does not escape his obligations by rejecting an executory contract; he merely substitutes the duty imposed upon breaching parties by state contract law for his antecedent duty to perform under the contract. Rejection does not, as the majority seems to believe, see ante at 9, void or rescind the contract. See, e.g., In re Murphy, 694 F.2d 172, 174 (8th Cir.1982).
 
 
 46
 The purpose of discharge, on the other hand, is to enable the debtor to start fresh in his reorganized economic life. See In re Vickers, 577 F.2d 683, 686-87 (10th Cir.1978). Discharge relieves the debtor of his debts by permanently extinguishing the claims and the interests of his creditors. 11 U.S.C. Secs. 524, 1141. See, e.g., In re Monroe Well Service, Inc., 80 B.R. 324, 334 (Bankr.E.D.Pa.1987). Rather than substituting one obligation for another, discharge nullifies the creditors' right to collect, leaving them without remedy except as may be provided in the reorganization plan. See In re Benjamin Coal Co., 978 F.2d 823, 827 (3d Cir.1992); In re Henderberg, 108 B.R. 407, 412 (Bankr.N.D.N.Y.1989). Qualifying support obligations in turn are exempted from discharge in order that the dependents of the debtor will not be left destitute by the discharge of his debts. See In re Bishop, 13 B.R. 304, 305 (Bankr.E.D.N.Y.1981).
 
 
 47
 Whether the debt arising from the rejection of an executory contract is dischargeable under section 523, as is evident from the foregoing, has no bearing whatsoever on whether it is rejectable under section 365. It is entirely possible under the law, although the majority inexplicably appears not to believe it so, for Mr. Lawson to reject the executory contract under section 365, but for the underlying debt still to be non-dischargeable under section 523. The majority reads Draper v. Draper, 48 B.R. 37, 40 (Bankr.E.D. Ark.1985), aff'd, 790 F.2d 52, 55 (8th Cir.1986), to hold otherwise, but it does not. Draper held only that rejection would not be allowed if it was not to the debtor's advantage.
 
 
 48
 The question in Draper was whether rejection of a support agreement that had been incorporated in a divorce decree would be to the advantage of the bankrupt husband's estate. The bankruptcy court concluded, and the Eighth Circuit agreed, that it would not. Rejection would simply have given the former Mrs. Draper a non-dischargeable claim for breach of the contract in the full amount specified by the contract and, in any event, would have done nothing to alter the husband's liability under the divorce decree. Draper, 48 B.R. at 40. Because the husband's liability would be the same whether he rejected the contract or not, rejection "would accomplish nothing," and so was not to the debtor's advantage. Id.
 
 II.
 
 49
 Because I would affirm the district court's judgment, I need not, and do not, decide the question of whether Mr. Lawson's rejection of the executory agreement gives rise to a dischargeable obligation under section 523. I would remand the case to the district court for a resolution of this question, should its resolution become necessary. Rejection of the post-nuptial agreement under section 365 would give Mrs. Lawson and the Lawson children, as third party beneficiaries, pre-petition claims for breach of contract, see 11 U.S.C. Secs. 365(g)(1), 502(g), the extent and nature of which would be determined by applicable state law. See In re Rega Properties, Ltd., 894 F.2d 1136, 1139 (9th Cir.), cert. denied, 498 U.S. 898 (1990); In re Cochise College Park, Inc., 703 F.2d 1339, 1348 n. 4 (9th Cir.1983). It is of no consequence that their contractual rights were contingent on the divorce occurring. See 11 U.S.C. Sec. 101(5) (defining "claim" to include contingent, unmatured and disputed rights to payment). These claims would be included in Mr. Lawson's reorganization plan; they would be unsecured, id. Secs. 502(g), 506; see, e.g., In re Continental Airlines, Inc., 146 B.R. 520, 531-32 (Bankr.D. Del.1992), as typically is the case for claims that arise following rejection; and in all likelihood they would be paid off, at least in part.
 
 
 50
 If these claims would not be completely satisfied under the bankruptcy plan, then and only then would the dischargeability of the obligation under section 523(a)(5) have to be determined, as the district court properly understood. The underlying obligation almost certainly would constitute a "debt" to Mr. Lawson's spouse and children within the meaning of the expansive definition of that term in 11 U.S.C. Sec. 101(12). The difficult questions likely would be whether the debt was intended as maintenance or support for Mrs. Lawson and the children and, if so, whether it was incurred "in connection with a separation agreement, divorce decree[,] other order of a court of record, ... or property settlement agreement," as required by section 523(a)(5). These are paradigmatic of questions as to which the testimony of the respective parties and findings by the trial court are essential, as the unsatisfying nature of the majority's resolution of these questions confirms, see ante at 13-16 (rejecting Mrs. Lawson's unrebutted testimony that retirement benefits provision was specifically added by parties to provide support for her); id. at 16-17 (finding that parties intended real estate as support for children, despite numerous differences between the inter vivos trust here and traditional child support).
 
 
 51
 Assuming their claims were found to satisfy the requirements of section 523(a)(5), Mrs. Lawson and the children could proceed, unimpaired by the discharge of other debts, to collect from Mr. Lawson, even if their claims were deemed to be unmatured on the date of the petition and disallowed under 11 U.S.C. Sec. 502(b)(5). Non-dischargeable debts survive discharge of the debtor's other debts and may be pursued by creditors as they would have been pursued outside of bankruptcy. See, e.g., In re Amigoni, 109 B.R. 341, 345 (Bankr.N.D. Ill.1989); In re Howell, 84 B.R. 834 (Bankr.M.D. Fla.1988).
 
 III.
 
 52
 Because I believe that the district court correctly held on the only issue before it that Mr. Lawson properly rejected his executory post-nuptial contract under 11 U.S.C. Sec. 365, I would affirm its judgment in full. If the question of the dischargeability of Mr. Lawson's underlying obligation under 11 U.S.C. Sec. 523 hereafter becomes relevant, it can be, as it should be, addressed first in a proceeding before the district court, where the intent of the parties can be properly ascertained. I respectfully dissent from the majority's opinion because, in error, it concludes that the first of these questions need not be addressed and it addresses the second when it is not only unnecessary but premature to do so.
 
 
 
 [1]
 The filing of the voluntary petition operated to stay the divorce proceedings. The stay has since been lifted by agreement of the parties
 
 
 [2]
 We find that the post-nuptial contract signed by Frank Lawson, Sr. and Susanna Lawson was executory at the moment that Frank Lawson, Sr. filed the bankruptcy petition. However, actually a finding to that effect is required only in the case of Susanna Lawson's claims since, executory or not, the agreement still, as is later shown, is nondischargeable against the children's claims as amounting to support
 
 
 [3]
 Virginia courts have been authorized to give effect to post-nuptial agreements dealing with support and property settlement, but are not required to do so. See Va.Code Ann. Sec. 20.109.1; Scott v. Scott, 12 Va.App. 1245, 1248, 408 S.E.2d 579, 581 (1991) (quoting Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975) (voluntary agreements promote policy of prompt resolution of disputes concerning maintenance and care of children and "should be encouraged."))
 
 
 [4]
 Other scenarios might, of course, require a different analysis. The Lawsons' post-nuptial agreement was written to have effect "in the event Frank C. Lawson and Susanna C. Lawson become divorced," and that event has all but formally occurred. Another agreement plainly stating that the obligations would arise only after entry of a final decree of divorce might indeed call for the court to examine the executory nature of the agreement before determining its character as support. Similarly, an inquiry into the executoriness of a post-nuptial agreement might be warranted if a bankruptcy petition were filed in the early stages of a couple's endeavors to sever their marriage, since it would be harder to characterize the divorce as inevitable
 
 
 [5]
 Under the code, a "debt" is a "liability on a claim." 11 U.S.C. Sec. 101(12). A "claim" means:
 (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
 (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.
 11 U.S.C. Sec. 101(5).
 
 
 [6]
 McCarty v. McCarty, 453 U.S. 210 (1980), decided that the federal laws entitling a commissioned officer of the United States Army to retired pay, 10 U.S.C. Secs. 3911 and 3929, precluded a state court from dividing the military non-disability retired pay pursuant to state community property laws. Frank Lawson, as a member of the Navy, is due benefits upon retirement
 
 
 [7]
 In a community property state, each divorcing spouse retains his or her separate property (assets the spouse owned before marriage or acquired separately during marriage through gift) and an equal and absolute right to a half interest in all community property. Virginia, the state where the couple filed for divorce, is not a community property state